Donald and Glenola
**KALUZA, Plaintiffs,**

v.

**HOME INSURANCE
COMPANY, Defendant.**

No. C4–86–1844.

Supreme Court of Minnesota.

April 3, 1987.

---

1. Mr. Herr was the reporter of the Minnesota Supreme Court Committee on Civil Procedure on the 1985 revision of the rules.

Mark A. Gwin, Minneapolis, for plaintiffs.

Michael J. Healey and Jodell Galman, St. Paul, for defendant.

SCOTT, Justice.

Donald and Glenola Kaluza filed this action in federal district court, alleging intentional and negligent infliction of emotional distress, misrepresentation and fraud, violation of Minn.Stat. § 176.82, abuse of process and fraud upon the courts, and violations of Minnesota's Fair Claim Handling Practices Act, Minn.Stat. ch. 72A. They sought general, special, and punitive damages from Home Insurance Company (Home), the workers' compensation carrier for Donald's employer.

Home brought a motion to dismiss the Kaluzas' action or to strike certain paragraphs of the Kaluzas' complaint. Because the parties presented matters outside the pleadings, the trial court treated Home's motion as one for summary judgment, and dismissed the Fair Claim Handling Practices Act claim and Mrs. Kaluza's claims. The court also, by order dated October 29, 1986, certified the following five questions to this court:

1. Does Minnesota Statutes section 176.82 create a remedy for the conduct alleged by plaintiff?

2. Does plaintiff's claim under Minnesota Statutes section 176.82 merge with the workers' compensation judge's award of penalties allowed by Minnesota Statutes section 176.225?

3. Assuming Minnesota Statutes section 176.82 creates a remedy for the conduct alleged by plaintiff, and this claim does not merge with plaintiff's prior recovery under Minnesota Statutes section 176.225, does "the amount of any compensation benefit to which the employee is entitled," Minn.Stat. 176.-82, refer (1) to all compensation to which the employee is entitled by reason of the work-related injury, (2) to all compensation denied plaintiff by defendant's intentional obstruction, or (3) to some other amount?

4. Does Minnesota Statutes section 176.031 preclude plaintiff's claims of misrepresentation and fraud, abuse of process and fraud upon the courts, intentional and negligent infliction of emotional distress, and for punitive damages?

5. Do plaintiff's claims of misrepresentation and fraud, abuse of process and fraud upon the courts, intentional and negligent infliction of emotional distress, and for punitive damages, merge with the workers' compensation judge's award of penalties allowed by Minnesota Statutes section 176.225?

The trial court's memorandum order recited the following facts, which were incorporated into the certification order: On February 26, 1981, Donald Kaluza sustained a work-related injury to his right arm. Home was the workers' compensation insurer for Kaluza's employer and initially accepted liability but has attempted, on several occasions, to terminate Kaluza's disability benefits. Home's last attempt to terminate these benefits gave rise to the present action.

An administrative conference was called for June 27, 1983, because Kaluza wished

to complain about Home's failure to pay certain benefits in a timely manner. Although the insurer did not mention any inadequacy in Kaluza's efforts to find work at this conference and a consent order, which was not appealed, was entered requiring Home to continue making payments to Kaluza, that same day Home decided to terminate Kaluza's benefits.

On June 29, 1983, the Minnesota Department of Labor and Industry received a notice of discontinuance, which was dated June 28, 1983. That notice, however, did not indicate any reason for the termination and was, therefore, without legal effect. On June 30, 1983, the mistake was discovered and a second notice, which was dated June 27, 1983, and which gave the reason for termination as failure to seek work, was prepared. It was received by the Department of Labor and Industry on July 7, 1983.

Minnesota's workers' compensation law changed on July 1, 1983. On that date an insurer could no longer discontinue benefits by filing a notice of discontinuance. Instead, the employee could demand a "242" conference, and, if the insurer failed to produce evidence justifying the termination, the employee's compensation continued. *See* Minn.Stat. § 176.242 (1984).

Another administrative conference was held on August 4, 1983. Kaluza asked that it be treated as a conference under Minn. Stat. § 176.242, but the state rehabilitation specialist denied that request because Home claimed the notice of discontinuance was served before July 1, 1983, the effective date of that statute. Home advised the specialist that Kaluza's benefits were terminated because his claimed job-seeking activities on May 25 and 26 did not coincide with the reports of a private investigator Home had hired to follow Kaluza. Home, however, provided no evidence to substantiate its allegations and knew at the time of the administrative conference that Kaluza had not falsified his job-seeking records. The specialist affirmed the June 27, 1983, consent order. Home neither appealed nor resumed paying compensation.

A compensation judge held a two-part hearing in December, 1983, and February, 1984. At that hearing, a Home employee admitted that Kaluza's benefits were not terminated for failure to seek work, as stated in the notice of termination dated June 27, 1983, but rather because of allegedly fraudulent mileage claims. The compensation judge found that Home's notices of discontinuance were filed on June 29 and July 7, 1983, and that both were invalid and illegal. She also found that Home should have known its allegations that Kaluza submitted fraudulent mileage reports were unfounded but that Home nevertheless did not resume benefit payments. Finally, the compensation judge found that Kaluza was entitled to penalties under Minn.Stat. § 176.225, subds. 1 and 5, because Home's conduct constituted an unreasonable, vexatious, and inexcusable delay in payment. She awarded the maximum allowable penalty plus attorney fees, reimbursement for mileage, interest, and costs and disbursements.

1. *Does Minnesota Statutes section 176.82 create a remedy for the conduct alleged by plaintiff?*

■ Minn.Stat. § 176.82 provides that "[a]ny person * * * in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee * * * and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled." Minn.Stat. § 176.82 (1986). The question, then, is whether Home's alleged conduct constitutes intentional obstruction. The Restatement (Second) of Torts uses the word "intent" "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). The memorandum from Home's New York office suggests, and Home's refusal to reinstate benefits even after it knew its allegations of false mileage reports were unfounded, its

agreement to a consent order and the same day deciding to terminate benefits, and its failure to pay benefits as ordered by the hearing officer demonstrate that Home intended to put Kaluza in a position where he would hopefully be forced to settle his claims.

To obstruct something is "[t]o impede; to interpose impediments to the hindrance or frustration of some act or service * * *." *Black's Law Dictionary* 972 (5th ed. 1979). It is to make accomplishment of the desired end difficult and slow. *See Conley v. United States*, 59 F.2d 929, 936 (8th Cir. 1932). Home's alleged conduct did hinder Kaluza in seeking workers' compensation, and it made his receipt of compensation difficult and slow. This conduct, therefore, is "intentionally obstructing" one seeking workers' compensation benefits. We answer the first certified question in the affirmative.

2. *Does plaintiff's claim under Minnesota Statutes section 176.82 merge with the workers' compensation judge's award of penalties allowed by Minnesota Statutes section 176.225?*

■ The compensation judge awarded penalties under Minn.Stat. § 176.225 (1984), which provided in part that:

Subd. 1. Grounds. Upon reasonable notice and hearing or opportunity to be heard, the division, a compensation judge, or upon appeal, the workers' compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

(a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or

(b) unreasonably or vexatiously delayed payment; or,

(c) neglected or refused to pay compensation; or,

(d) intentionally underpaid compensation.

\* \* \* \* \* \*

Subd. 5. Penalty. Where the employer is guilty of inexcusable delay in making payments, the payments which are found to be delayed shall be increased by 10 percent. Withholding amounts unquestionably due because the injured employee refuses to execute a release of his right to claim further benefits will be regarded as inexcusable delay in the making of compensation payments. If any sum ordered by the department to be paid is not paid when due, and no appeal of the order is made, the sum shall bear interest at the rate of 12 percent per annum. Any penalties paid pursuant to this section shall not be considered as a loss or expense item for purposes of a petition for a rate increase made pursuant to chapter 79.

Minn.Stat. § 176.225, subds. 1, 5 (1984). She found that "the refusal of the insurer to reinstate temporary total disability payments when it was furnished with verification of the trips made by the employee which had been alleged to be falsely claimed constitutes an unreasonable, vexatious and inexcusable delay in payment, entitling the employee to penalties pursuant to Minn.Stat. § 176.225, subds. 1 and 5."

Home argues that because it was assessed penalties under section 176.225, it cannot also be liable under Minn.Stat. § 176.82. Section 176.82 provides that:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. *Dam-*

ages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

Minn.Stat. § 176.82 (1986) (emphasis added). Kaluza, on the other hand, argues that when the legislature enacted section 176.82 in 1975, *see* Act of June 4, 1975, ch. 359, §§ 21, 23, 1975 Minn.Laws 1168, 1188–89, it intended its penalties to be in addition to those available under section 176.225, which was originally enacted in 1953, *see* Act of April 24, 1953, ch. 755, § 31, 1953 Minn.Laws 1099, 1133 (originally codified as Minn.Stat. § 176.161).

Section 176.82 itself provides that damages, including a diminution in workers' compensation benefits, may be recovered and that "[d]amages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled." *See* Minn.Stat. § 176.82 (1986). This court has held that penalties under section 176.225 are workers' compensation "benefits," *see Wojciak v. Northern Package Corp.*, 310 N.W.2d 675, 678 (Minn. 1981), and, therefore, they could not be offset against any award under section 176.82. The section 176.225 penalties and the section 176.82 action do not merge because the section 176.82 action also entitles the wronged employee to recover damages not covered by the workers' compensation act. We answer the second certified question in the negative.

3. *Assuming Minnesota Statutes section 176.82 creates a remedy for the conduct alleged by plaintiff, and this claim does not merge with plaintiff's prior recovery under Minnesota Statutes section 176.225, does "the amount of any compensation benefit to which the employee is entitled," Minn.Stat. § 176.82, refer (1) to all compensation to which the employee is entitled by reason of the work-related injury, (2) to all compensation denied plaintiff by defendant's intentional obstruction, or (3) to some other amount?*

■ Minn.Stat. § 176.82 provides for an award "for damages incurred by the em-

ployee * * * and for punitive damages not to exceed three times the amount of *any* compensation benefit to which the employee is entitled." Minn.Stat. § 176.82 (1986) (emphasis added). Home argues that "any compensation" in this context refers only to compensation denied by the alleged intentional obstruction, while Kaluza claims that "any compensation" refers to all compensation benefits.

The plain language of the statute and the necessity that punitive damages be high enough to have the desired deterrent effect favor Kaluza's construction. In the context of this statute, "any" means "all." *Cf. Duguay v. Hopkins*, 191 Conn. 222, 228–29, 464 A.2d 45, 50 (1983). The answer to the third certified question is: all compensation to which the employee is entitled by reason of the work-related injury.

4. *Does Minnesota Statutes section 176.031 preclude plaintiff's claims of misrepresentation and fraud, abuse of process and fraud upon the courts, intentional and negligent infliction of emotional distress, and for punitive damages?*

Minn.Stat. § 176.031 provides in part: "The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, his personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death." Minn. Stat. § 176.031 (1984). This statute reflects the trade-off of the workers' compensation system that gives both employees and employers some benefits they did not have under common law. In return, both gave up some advantages they had under common law. *See Carlson v. Smogard*, 298 Minn. 362, 368, 215 N.W.2d 615, 619 (1974). The employer's liability under the workers' compensation act is exclusive only if it is prescribed by the act; that is, if the injury or damages arose out of or in the course of employment. Minn.Stat. §§ 176.-021, 176.031 (1984); *see Hildebrandt v.*

*Whirlpool Corp.*, 364 N.W.2d 394 (Minn. 1985).

 Tort claims against an employer or its insurer are not barred by exclusivity provisions if the injuries claimed or the damages sought did not arise out of and in the course of employment. *See e.g., Hollman v. Liberty Mutual Ins. Co.*, 712 F.2d 1259, 1260 (8th Cir.1983) (suit based on intentional, malicious, and fraudulent actions "which occurred after [employee's] employment and during the pendency of her claim" was not barred by the exclusivity provision of South Dakota's workers' compensation law); *Reed v. Hartford Accident & Indemnity Co.*, 367 F.Supp. 134, 135 (E.D.Pa.1973) (claims based on insurer's independent torts, including intentional economic duress and abuse of process, were unrelated to employee's employment); *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 155–57, 609 P.2d 257, 260–61 (1980) (intentional tort does not arise out of employment but rather after employment has ceased). Because the injuries alleged here did not arise out of and in the course of employment, these injuries do not fall within the workers' compensation act, and, therefore, the employee's common law remedy is unaffected by the act. *See Rosenfield v. Matthews*, 201 Minn. 113, 115, 275 N.W. 698, 699 (1937). We therefore answer the fourth certified question in the negative.

5. *Do plaintiff's claims of misrepresentation and fraud, abuse of process and fraud upon the courts, intentional and negligent infliction of emotional distress, and for punitive damages, merge with the workers' compensation judge's award of penalties allowed by Minnesota Statutes section 176.225?*

 Minn.Stat. § 176.225 allows a workers' compensation judge to award additional compensation and a penalty when, as here, the insurer unreasonably or vexatiously delays payment. *See* Minn.Stat. § 176.225, subds. 1, 5 (1984). Home argues

that when penalties for delay are included in the Workers' Compensation Act, intentional delay in paying benefits does not give rise to a claim outside the Act. *See, e.g., Bright v. Nimmo*, 756 F.2d 1513, 1515 (11th Cir.1985); *Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, 464 (D.C.1983); *Robertson v. Travelers Ins. Co.*, 95 Ill.2d 441, 450–51, 69 Ill.Dec. 954, 959, 448 N.E.2d 866, 871 (1983); *Gonzales v. United States Fidelity and Guaranty Co.*, 99 N.M. 432, 434, 659 P.2d 318, 320 (N.M.Ct.App.1983). Kaluza, however, argues that these penalty provisions are not intended to cover intentional torts. *See, e.g., Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220, 223 (Me.1978); *Southern Farm Bureau Casualty Ins. Co. v. Holland*, 469 So.2d 55, 58 (Miss.1984); *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 157, 609 P.2d 257, 262 (1980); *Coleman v. American Universal Ins. Co.*, 86 Wis.2d 615, 626, 273 N.W.2d 220, 224 (1979).

"This provision of the Act did not contemplate the commission of an independent tort, and its penalty is hardly adequate to deter willful actions of an overreaching insurance company against a weekly wage earner." *Southern Farm Bureau Casualty Ins. Co. v. Holland*, 469 So.2d 55, 58 (Miss.1984). Here, independent torts that did not arise out of or in the course of employment are alleged.[1] These alleged torts are, therefore, not within the scope of the workers' compensation system. We therefore answer the fifth certified question in the negative.

The certified questions are answered as follows:

1. Affirmative.
2. Negative.
3. (1).
4. Negative.
5. Negative.

---

1. We are not asked and do not answer the question of whether the allegations with respect

to these claims are sufficient to survive a summary judgment motion.