Dennis J. FLAHERTY, Respondent,

v.

James LINDSAY, Chief of Police, et al., Appellants.

No. C5–89–2175.

Court of Appeals of Minnesota.

July 3, 1990.

Review Granted Aug. 23, 1990.

Daniel B. O'Leary, Mansur, O'Leary & Gabriel, P.A., St. Paul, for respondent.

Richard J. Schieffer, Johnson & Wood, Mound, for appellants.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and MULALLY*, JJ.

OPINION

EDWARD D. MULALLY, Judge.

Appellants City of Brooklyn Center and Police Chief James Lindsay appeal from a judgment wherein the trial court determined appellants violated Minn.Stat. § 176.82 (1988) by intentionally obstructing respondent Dennis Flaherty from seeking further worker's compensation benefits. Appellants argue the trial court erred in characterizing their actions as intentional obstruction within the meaning of section 176.82 and in awarding Flaherty damages for emotional distress, punitive damages and attorney fees. Flaherty challenges the sufficiency of the trial court's award of punitive damages and attorney fees. He also contends he was improperly denied the right to a jury trial.

We affirm the trial court in all respects.

FACTS

Dennis Flaherty was employed as a police patrol officer for the City of Brooklyn Center from May 1974 through October 1985. He also served as president of the local police officers union.

In June 1981, Flaherty injured his knee while on duty. As a result, he was disabled for several months. He returned to light duty work, resuming full duties in October 1981, although he contended that he was still experiencing significant pain. After arthroscopic surgery in 1983 and after six months of light duty, Flaherty's physician released him to full time patrol.

Within a few weeks, however, Flaherty again complained that his knee was extremely painful and he requested a reassignment to a different and larger squad car to alleviate the stress on his knee. Although his request was initially granted, it was reversed by the captain on duty and Chief Lindsay. Flaherty was told he should go home until he could withstand full time duty in his originally assigned squad car.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

June 28, 1984, was Flaherty's last day of duty. He began receiving worker's compensation benefits shortly thereafter. In June 1985, appellants offered the job of full-time code enforcement officer (CEO) to Flaherty. Believing this position to be unsuitable, Flaherty retained an attorney to protest appellants' action at a worker's compensation hearing. He claimed appellants made the offer in bad faith, with the knowledge that Flaherty would reject the offer, and thus cause the termination of his benefits. The hearing resulted in a determination that the CEO position was unsuitable and Flaherty's benefits were not cut off.

Flaherty remained a city employee on sick leave until he was terminated on October 31, 1985, at which time all fringe benefits were cashed out.

Subsequently, Flaherty commenced a civil action pursuant to Minn.Stat. § 176.82 (1988) alleging appellants intentionally attempted to obstruct him from seeking further worker's compensation benefits. The trial court found in Flaherty's favor and awarded him $14,900 for emotional damages and for attorney fees incurred as a result of the worker's compensation hearing, $50,000 in punitive damages, and $40,000 for attorney fees in bringing the trial court action.

## ISSUES

1. Did the trial court err in finding appellants' actions constituted an intentional obstruction of Flaherty's seeking further worker's compensation benefits within the meaning of Minn.Stat. § 176.82 (1988)?

2. Are damages for emotional harm available under Minn.Stat. § 176.82 (1988)?

3. Are punitive damages available under Minn.Stat. § 176.82 (1988) without proof of compensatory damages?

4. Did the trial court abuse its discretion in its award of attorney fees to Flaherty?

5. Does Flaherty have the right to a jury trial in an action brought under Minn. Stat. § 176.82 (1988)?

## ANALYSIS

### 1. *Intentional Obstruction*

Although the Workers' Compensation Act is generally an employee's exclusive remedy, the legislature has afforded a further remedy under Minn.Stat. § 176.82 which is separate and independent from any penalties awarded under the Act. Section 176.82 provides as follows:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

Minn.Stat. § 176.82 (1988).

A finding of "intentional obstruction" requires proof that an employer deliberately participated in activities prejudicial to an employee's right to compensation. An employee must prove by clear and convincing evidence that the employer's conduct was outrageous and extreme, or that the employer acted in a cruel or venal manner. *See Bergeson v. United States Fidelity & Guaranty Co.*, 414 N.W.2d 724, 727 (Minn. 1987). "Intentional obstruction" has been found to exist where an employee is hindered in seeking workers' compensation and the receipt of compensation is made difficult and slow. *See Kaluza v. Home Insurance Co.*, 403 N.W.2d 230, 234 (Minn. 1987).

The trial court found appellants' offer of the CEO position to Flaherty " * * * was essentially a dog catching and ticket writing job, which had no opportunity for advancement, was at half [Flaherty's] patrolman's salary, and had qualifications so far

below [Flaherty's] level of experience and expertise as to be laughable." The court further determined appellants' conduct constituted intentional obstruction based upon the following evidence indicated in its findings:

24. That this bad faith on the part of defendant City and defendant Lindsay is evidenced by:

(a) the secrecy surrounding the activities which led up to the job offer, *i.e.*, the fact that the QRC [Qualified Rehabilitation Consultant] was told not to inform plaintiff or his attorney that the CEO position was being considered.

(b) the obvious disregard for the opinion of the QRC—the one trained in assessing job suitability—that this was an inappropriate job offer.

(c) defendant Lindsay's statement that he bet plaintiff would not accept the CEO job.

(d) defendant Lindsay's statement to Robert Dirks that plaintiff had no choice but to accept the CEO position, in that, if he refused, he would lose his comp benefits.

(e) the refusal of defendants to withdraw the job offer after it was made clear that plaintiff did not find the job acceptable.

(f) the fact that the city claimed to be willing to change the CEO job to accommodate plaintiff's physical problems but were unwilling to accommodate plaintiff's needs so he could function as a patrolman, dispatcher or investigator.

Appellants contend there is no clear and convincing evidence of conduct by Lindsay that is outrageous, egregious and extreme, and that the trial court erred in characterizing appellants' actions as intentional obstruction within the meaning of Minn.Stat. § 176.82. They argue there is no evidence in the record to support the trial court's findings that Lindsay gave a recommendation and instruction that Flaherty be offered the CEO position.

The record, however, reveals evidence that reasonably tends to support the trial court's findings. The trial court is the sole judge of the credibility of the witnesses and we will not reverse findings of fact unless they are clearly erroneous. *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777, 779 (Minn.1989).

### 2. *Damages for Emotional Harm*

The issue of whether an employee may recover damages for emotional distress under Minn.Stat. § 176.82 has not previously been determined in Minnesota. However, this court has upheld an award of damages for emotional distress in the absence of proof of medical treatment. *See Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn.App.1984).

In the present case, the trial court awarded Flaherty damages for emotional harm pursuant to what it characterized as a plain reading of Minn.Stat. § 176.82. Flaherty was offered a totally unsuitable job that was offensive and demeaning to him. We agree with the trial court's reasoning that

> if [Flaherty] is not allowed to recover his intangible losses * * * this court would be sending the wrong message * * *. Defendants' behavior was unconscionable * * *. To read the statute any other way would be antithetical to all notions of justice.

### 3. *Punitive Damages*

Minn.Stat. § 176.82 (1988) expressly provides that any person in violation of that section is liable for "punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled."[1] The supreme court has held that the punitive damages award is based on the value of all compensation paid in the case, not just the compensation that was obstructed. *See Kaluza,* 403 N.W.2d at 235.

Appellants argue Flaherty is not entitled to an award of punitive damages because he has not proven compensatory damages. Although the general rule is that punitive

---

1. The word "person" applies to political and corporate bodies, and to partnerships and other unincorporated associations. Minn.Stat. § 645.44, subd. 7 (1988).

damages are not available without actual or compensatory damages, exceptions have been carved out for actions where the harm caused is intangible. *See Jacobs v. Farmland Mutual Insurance Co.,* 377 N.W.2d 441, 444 (Minn.1985).

Appellants also maintain that Minn.Stat. § 466.04, subd. 1 (1988) sets liability limits on claims against a municipality and precludes an award of punitive damages against the city. That section, however, provides only that no claim for damages under the Tort Liability Act shall include punitive damages. Flaherty brought his action under Minn.Stat. § 176.82, and nothing in that section excludes a municipality from liability for punitive damages.

Flaherty contends the trial court's punitive damages award of $50,000 was insufficient. He argues that only an award of the full amount of potential treble damages, $263,267.55, would send a clear message of deterrence to employers.[2] While punitive damages must be high enough to have the desired deterrent effect, *Kaluza,* 403 N.W.2d at 235, the amount of the award is within the trial court's discretion.

### 4. *Attorney Fees*

█ Flaherty also contends the trial court's award of attorney fees in the amount of $40,000 was insufficient because he submitted itemized bills totaling $71,-169. The trial court, however, acted within its discretion in determining the reasonable value of attorney fees. *See Wojciak v. Northern Package Corp.,* 310 N.W.2d 675, 681 (Minn.1981).

### 5. *Right to a Jury Trial*

█ Although Flaherty contends Minn. R.Civ.P. 38.01 provides him with the right to a jury trial because he brought an action for the recovery of money only, the trial court correctly concluded his claim was statutorily created and denied him a trial by jury. Giving or withholding of a jury trial is a legislative prerogative where new rights and remedies are created which were

unknown at common law. *Breimhorst v. Beckman,* 227 Minn. 409, 434, 35 N.W.2d 719, 734 (1949). Minn.Stat. § 176.82 does not specifically provide for a jury trial. Absent this section, Flaherty would have no cause of action against appellants.

### DECISION

We affirm the trial court in all respects. Affirmed.

---

**2.** The total amount of worker's compensation benefits paid to Flaherty was $87,755.85. Three times that amount is $263,267.55.