CHUTICH, Justice.
In this interlocutory appeal, we consider whether an employee-who was injured while working and received workers' compensation benefits-may bring claims for disability discrimination against his employer under the Minnesota Human Rights Act. Appellant Keith Daniel, a firefighter for the Minneapolis Fire Department ("Department"), sued respondent City of Minneapolis ("City"), alleging that, while he was working for the Department, the City discriminated against him by failing to accommodate his disability and retaliating against him for seeking an accommodation.
The City moved for summary judgment, arguing that Daniel's claims are barred by the exclusivity provision in the Minnesota Workers' Compensation Act. The district court denied summary judgment, the court of appeals reversed, and we granted Daniel's petition for review.
To give effect to the plain language of the workers' compensation act and the human rights act, we hold that an employee can pursue claims under each act because each act provides a distinct cause of action that redresses a discrete type of injury to an employee. The human rights act holds employers liable for discrimination, a public harm that violates a person's civil rights and self-worth; the act affords broad relief, including equitable, compensatory, punitive, and public remedies for unlawful workplace discrimination. By contrast, the workers' compensation act holds employers liable for work-related, personal injuries; it requires employers to pay monetary compensation to employees to help *642 injured employees recover physically and financially. Therefore, for the reasons explained below, we overrule our decision in Karst v. F.C. Hayer Co. , 447 N.W.2d 180 (Minn. 1989), reverse the decision of the court of appeals, and remand the case to the district court for further proceedings.
FACTS
Because this case appears before us on the City's motion for summary judgment, we view the evidence in the light most favorable to Daniel, and resolve all doubts and factual inferences against the City. See Rochester City Lines, Co. v. City of Rochester , 868 N.W.2d 655, 661 (Minn. 2015). Daniel worked as a firefighter for the Minneapolis Fire Department for 14 years. While employed, Daniel suffered numerous work-related injuries, including many injuries to his right ankle and to his shoulders. His complaint focuses on the Department's response to his request for a footwear accommodation.
While performing rescue duties in August 2014, Daniel injured his right ankle. After this injury, Daniel's doctor gave him a prescription for supportive "tennis shoes with arch support + high rescue boot high ankle" to reduce pain and improve ankle stability.
Daniel filed a claim petition for workers' compensation benefits to pay for the cost of the shoes and inserts prescribed by his doctor, as well as for lost wages. As part of the claim process, a doctor conducted an independent medical examination for the City. The doctor concluded that Daniel's ankle issues were "aggravated by his ... need to walk on uneven surfaces wearing heeled shoes at work." He recommended that Daniel wear flat shoes but opined that Daniel could work full time without restrictions. The City accepted liability for Daniel's workers' compensation claim in January 2015.
After a captain told Daniel that he could wear black tennis shoes in the station house, Daniel purchased black tennis shoes and fitted them with special inserts. The City compensated Daniel for the black tennis shoes, orthotic inserts, supportive rescue boots, and lost wages. Daniel then wore the tennis shoes at the station house for about 6 to 8 weeks, until May 2015, when the Deputy Chief told him that he could no longer wear them because they did not comply with the Department's policy for station shoes.[1]
Daniel asserts that wearing the tennis shoes "did not re-aggravate his ankle injury," but after he reverted to wearing station shoes, his ankle started to "swell" again and "exacerbated his pain." Two months after being told that he could not wear his prescribed tennis shoes, Daniel reinjured his ankle and soon thereafter seriously injured his shoulder when he lost his footing climbing down from a fire truck.
The Department placed Daniel on light-duty status after the shoulder injury. While working on light-duty status, the Department did not allow Daniel to wear his prescribed tennis shoes. Because Daniel claimed that not being able to wear the prescribed shoes made the light-duty job fall outside of his physical restrictions, the Department placed him on leave. The Department told him that he could return to work if his work restrictions allowed him to wear shoes that complied with the Department's footwear policy.
*643 While on injury leave, Daniel and the Department engaged in "numerous" meetings to discuss a shoe that would comply with the Department's uniform policy and Daniel's footwear prescription; they never agreed on an acceptable shoe. The Department informed Daniel that if he wished to receive workers' compensation benefits for his injury and continue his employment, he would have to comply with the Department's uniform guidelines.
Daniel then sued the City in December 2015, asserting claims under the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 -.44 (2018), and the Minnesota Workers' Compensation Act, Minn. Stat. §§ 176.001 -.862 (2018). He claims that the City violated the human rights act by not allowing him to wear doctor-prescribed tennis shoes inside the station house, which, he alleges, was a reasonable accommodation. He also maintains that the City retaliated against him for seeking an accommodation.[2]
One month after he sued the City, Daniel completed a functional-capacity examination for the City. The examination revealed that he was "not able to reach shoulder level with his left arm" and that "he could only carry 40 pounds seldom and only 20 pounds over his head seldom." These examination results prompted the City to seek early retirement benefits for Daniel.
Daniel accepted the early retirement benefits in March 2016, ending his employment with the City. In a deposition, he stated that he could have had surgery for his shoulder injury and not retired early, but he agreed to early retirement because he was told that even if he had the surgery, "the fire department did not have a position for [him] to wear tennis shoes."
In June 2016, Daniel settled his workers' compensation claims for about $125,000. The settlement agreement identified and covered specific work-related, physical injuries that Daniel sustained between 2001 and 2015, including his ankle injuries.
The City moved for summary judgment on the remaining claims 2 months later, arguing in part that the exclusivity provision of the workers' compensation act bars Daniel's claims under the human rights act. Daniel also moved for summary judgment. The district court denied both motions, concluding that (1) the claims under the human rights act were not barred because the workers' compensation act does not provide a remedy for the discrimination claims that Daniel alleged under that act, and (2) factual disputes precluded summary judgment on Daniel's claims.
The City filed an interlocutory appeal,[3] asserting that the district court lacks subject-matter jurisdiction over Daniel's claims under the Minnesota Human Rights Act because the exclusivity provision of the Minnesota Workers' Compensation Act bars such claims.[4] The court of appeals *644 agreed and reversed the district court's decision to deny summary judgment on the human rights act claims. Daniel v. City of Minneapolis , No. A17-0141, 2017 WL 6418220, at *5 (Minn. App. Dec. 18, 2017). The court remanded the case for the district court to address Daniel's remaining claims. Id. at *6. Daniel petitioned for review, which we granted.
ANALYSIS
We consider whether the district court has subject-matter jurisdiction over Daniel's claims under the human rights act. McGowan v. Our Savior's Lutheran Church , 527 N.W.2d 830, 832-34 (Minn. 1995). The court has no subject-matter jurisdiction over claims barred by the exclusivity provision of the workers' compensation act. Id. An order denying summary judgment based on subject-matter jurisdiction is immediately appealable. Id. at 833. Subject-matter jurisdiction is a question of law that we review de novo. Nelson v. Schlener , 859 N.W.2d 288, 291 (Minn. 2015).
In general, "unless a statute provides that its remedy is exclusive," a party may bring claims that arise out of the same set of facts under different statutes. Abraham v. Cty. of Hennepin , 639 N.W.2d 342, 346-47 (Minn. 2002). Daniel has asserted claims under two acts, both of which contain exclusivity provisions: the Minnesota Workers' Compensation Act and the Minnesota Human Rights Act. The exclusivity provision in the workers' compensation act states: "The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee ... on account of such injury or death." Minn. Stat. § 176.031. Similarly, the exclusivity provision in the human rights act states: "as to acts declared unfair by [the human rights act], the procedure herein provided shall, while pending, be exclusive." Minn. Stat. § 363A.04.
We previously considered the relationship between these two exclusivity provisions in Karst v. F.C. Hayer Company . There, an employee who had received workers' compensation benefits for work-related injuries brought a discrimination claim under the human rights act for the employer's refusal to rehire him. 447 N.W.2d at 182-83. We held that the exclusivity provision under the workers' compensation act barred the employee's claims for disability discrimination under the human rights act. Id. at 186.
In reaching this conclusion, we rejected the employee's argument that he could bring claims under the human rights act because discrimination was an injury "separate and distinct" from the loss of employment. Id. at 184. We concluded, without explanation, that "[a]lthough the injuries suffered by Karst as a result of [the employer's] refusal to rehire him may be conceptually distinct from his work-related injuries, any difference is immaterial." Id.
Instead of focusing on the "exact nature and cause of these injuries," and whether the injury from disability discrimination fell within the coverage of the workers' compensation act, we considered whether that act provided the employee a "remedy" for the employer's refusal to rehire the injured employee. Id . After determining that a remedy existed under the workers' compensation act, we noted that when that act applies, we have been unwilling to extend existing "narrow" exceptions to its exclusivity clause absent clear legislative intent. Id. at 184-85.
Turning next to the human rights act, we acknowledged the Legislature's policy declaration to " 'secure for persons in this state, freedom from discrimination ... [i]n *645 employment because of ... disability.' " Id. at 185 (quoting Minn. Stat. § 363.12, subd. 1 (1988) ). We further acknowledged that the plain language of the act could reasonably be read to cover "people disabled as a result of work-related physical injuries." Id. Without first finding any ambiguity in the act's language, we reviewed the legislative history of the human rights act. Because the legislative history did not discuss the likely impact of the reasonable-accommodation provision on the workers' compensation act, we interpreted this legislative silence to mean that the "legislature did not intend to authorize virtually every injured worker who is not rehired to bring a disability discrimination action." Id.
We further determined that because the two acts were substantially amended in the same legislative session, we could not resolve the conflict that existed between each act's exclusivity provision by looking at which one was enacted last. Id. at 186. Concerned with the potential for an employer's dual liability and persuaded by the reasoning of a single case from the Wisconsin Court of Appeals,[5] we "decline[d] to interpret the Human Rights Act as applicable here." Id.
Here, the parties dispute whether Karst is good law and whether this case is distinguishable from Karst . The City argues that we must follow Karst under the doctrine of stare decisis because the Legislature has not amended either act in response to Karst . Reasoning that this case is indistinguishable from Karst , the City asserts that Daniel's claims under the human rights act are barred by the workers' compensation act.[6]
Daniel urges us to overrule Karst and hold that the two exclusivity provisions do not conflict. He contends that he can pursue his claims under the human rights act because they relate to discrimination, an injury that is separate and distinct from a workplace injury that may precede the discrimination. Alternatively, even if we continue to adhere to Karst , Daniel argues that his claims are distinguishable because Karst is limited to claims for an employer's refusal to rehire a disabled employee and does not apply to claims for an employer's discrimination against an employee during an "ongoing working relationship."
In considering whether to reaffirm our decision in Karst , we recognize that we do not overturn past precedent lightly. We are "extremely reluctant to overrule our precedent under principles of stare decisis and require a compelling reason before overruling a prior decision." Cargill, Inc. v. Ace Am. Ins. Co. , 784 N.W.2d 341, 352 (Minn. 2010) (citation omitted) (internal quotation marks omitted). But we are not bound to "unsound principles." Id. (citation omitted) (internal quotation marks omitted). Stare decisis is a "guiding policy," not an "inflexible rule" or a "shield" for an error of law.
*646 Johnson v. Chi., Burlington & Quincy R.R. Co. , 243 Minn. 58, 66 N.W.2d 763, 771 (1954) (citation omitted) (internal quotation marks omitted).
We begin with well-established principles of statutory interpretation because Karst , and this case, rest on the language of the exclusivity provisions in two different statutes. We interpret statutes de novo, Burt v. Rackner, Inc. , 902 N.W.2d 448, 451 (Minn. 2017), to "ascertain and effectuate" the Legislature's intent, Minn. Stat. § 645.16 (2018). "When the words of a law in their application to an existing situation are clear and free from all ambiguity," the plain language of the statute controls. Minn. Stat. § 645.16. To ascertain the Legislature's intent, we construe the law to "give effect to all its provisions," id. , presume that the Legislature "intends the entire statute to be effective and certain," and presume that the Legislature "intends to favor the public interest as against any private interest," Minn. Stat. § 645.17(2), (5) (2018). Applying these principles here, we are compelled to conclude that the decision in Karst is contrary to the plain language of the workers' compensation act and the human rights act.
The exclusivity provision under the workers' compensation act states that an employer's liability under the act displaces "any other liability ... on account of such injury ." Minn. Stat. § 176.031 (emphasis added). Whether the exclusivity provision bars claims under the human rights act therefore depends on the meaning of "such injury."
We have previously interpreted the language "such injury" by looking at the scope of an employer's liability under section 176.021, subdivision 1. See Kaluza v. Home Ins. Co. , 403 N.W.2d 230, 235 (Minn. 1987). In Kaluza , we stated that an "employer's liability under the workers' compensation act is exclusive only if it is prescribed by the act; that is, if the injury or damages arose out of or in the course of employment." Id. (citing Minn. Stat. §§ 176.021, .031 (1984)). Karst itself recognized that the critical question presented by the two exclusivity provisions at issue here becomes, "Are injuries resulting from disability discrimination within the coverage of the Minnesota Workers' Compensation Act?" 447 N.W.2d at 184. Accordingly, we must first examine the scope of the workers' compensation act.
The plain language of section 176.021 limits the meaning of "injury" in the exclusivity provision to "personal injury." Specifically, section 176.021, subdivision 1, states: "Every employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury ... of an employee arising out of and in the course of employment without regard to the question of negligence." (Emphasis added.)
"Personal injury" encompasses both a "mental impairment," including "a diagnosis of post-traumatic stress disorder,"[7] and a "physical injury" that arises out of and in the course of employment. Minn. Stat. § 176.011, subds. 15(d), 16. In other words, the phrase "such injury" in the exclusivity provision of section 176.031 of the workers' compensation act clearly refers to the discrete categories of "personal injury."
The dissent takes a different approach, focusing on the words "on account *647 of" in the phrase "on account of such injury." This phrase, read as a whole, means that an employer's workers' compensation liability is exclusive of "any other liability" only if the injury itself falls within the coverage provisions of the workers' compensation act.[8] See Minn. Stat. § 176.031. Whether an injury is a physical injury or mental impairment"arising out of and in the course of employment," Minn. Stat. § 176.011, subd. 16, therefore, necessarily depends upon the exact nature and cause of the injury. This approach is endorsed by the leading authority on workers' compensation, which adheres to the view that "an exclusivity challenge will hinge upon the type of injury sustained." 9 Lex K. Larson, Larson's Workers' Compensation Law § 104.05[4] (Matthew Bender Rev. ed. 2017) (emphasis added).
In Karst , however, we focused on whether the workers' compensation act provided a remedy to the employee for the injury claimed, and considered the "exact nature and cause" of the injury to be irrelevant. 447 N.W.2d at 184. In light of the statutory language set out above, Karst 's focus on remedy was misplaced. Rather, whether the exclusivity provision bars an employee's claims depends precisely upon the "exact nature and cause" of the injury because the exclusivity provision, by its express language, only applies if the injury is one that is covered by the act. Accord , 9 Larson, supra , § 100.04 (stating that the exclusivity provision extends only to an injury that "come[s] within the fundamental coverage provisions of the act."); id. , § 100.01[4] ("The operative fact in establishing exclusiveness is that of actual coverage, not of the election to claim compensation in a particular case."); id. , § 100.03[1] (noting the general exception to workers' compensation exclusivity for claims under state anti-discrimination laws).
Employer liability under the workers' compensation act turns on the exact nature and cause of the injury because the workers' compensation scheme was meant to replace the tort system of fault-based adjudication for workplace injury claims, with a system of strict liability that ensured that injured workers would receive expedient relief. See Lunderberg v. Bierman , 241 Minn. 349, 63 N.W.2d 355, 364-65 (1954). Although the workers' compensation act makes employers strictly liable for a personal injury encompassed by the act, Minn. Stat. § 176.021, subd. 1, the act also limits an employer's liability for a covered "personal injury" to statutory compensation that includes lost wages and reimbursement for medical expenses and treatments. See, e.g. , Minn. Stat. §§ 176.021, .061, subd. 7, .221, subd. 9.[9]
*648 Here, the workers' compensation act functioned as the Legislature intended. Regardless of the City's fault for Daniel's ankle injury, the City accepted liability under the workers' compensation act and compensated him because his ankle injury was a "physical injury" that arose out of and during the course of his employment with the Department. See Minn. Stat. §§ 176.011, subd. 16, .021, subd. 1. Specifically, Daniel received financial compensation for the cost of medical expenses and for the wages that he could not earn while recovering from his ankle injury. He was also reimbursed for the price of the prescribed tennis shoes and the orthotic inserts that he purchased to comply with his doctor's prescription.
Daniel's claimed injury under the human rights act, on the other hand, is different from the physical injury that he sustained at work. He claims a distinct injury arising from the City's later response to his disability, an alleged deliberate failure to accommodate his disability by refusing to allow him to wear his doctor-prescribed tennis shoes. His claims arise under the human rights act's disability-accommodation requirement, which makes it unlawful for an employer to fail "to make reasonable accommodation to the known disability of a qualified disabled person" unless the employer can demonstrate that the accommodation would impose an "undue hardship" on the employer. Minn. Stat. § 363A.08, subd. 6(a).
Unlike the workers' compensation act, the human rights act is a civil rights law that protects employees from unlawful employment discrimination.[10] Minn. Stat. § 363A.02, subd. 2 (stating that the "opportunity to obtain employment ... without such discrimination ... is ... a civil right"); cf. Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n , --- U.S. ----, 138 S.Ct. 1719, 1727, 201 L.Ed.2d 35 (2018) (explaining that a state civil rights law prohibiting discrimination serves to protect "dignity and worth"). In this remedial act, the Legislature instructed courts to "liberally" construe the act's provisions to ensure that the act would secure the right to be free from discrimination. Minn. Stat. § 363A.04. Recourse under the human rights act, including via a private cause of action for violations of the act, see Minn. Stat. § 363A.28, subd. 1, is the exclusive remedy for an employee to challenge an employer's discriminatory conduct as a violation of civil rights. Minn. Stat. § 363A.04.
Here, Daniel asserts that the City's alleged discriminatory response to his disability not only prevented him from working, but violated his civil rights by harming his dignity and self-respect as a disabled employee. These human rights act claims focus solely on the employer's allegedly intentional conduct in responding to Daniel's disability and the alleged injuries that flow from that response. They fit easily within the human rights act. Employers cannot, based on an employee's membership in a protected class, discharge an employee or discriminate against an employee regarding the terms, conditions, or privileges of employment. Minn. Stat. § 363A.08, subd. 2(3). Just as an employer cannot discriminate on the basis of race or gender, an employer cannot refuse to make reasonable accommodations "to the known disability of a qualified disabled person," unless doing so would be an undue hardship to that employer.
*649 Id ., subd. 6(a). If an employer commits an unfair employment practice against a disabled employee, that employer has, by law, discriminated against that employee in violation of the act, and the employee can sue the employer for that discrimination.
As we recognized in Karst , the definition of a "qualified disabled person" under the human rights act "does not exclude people disabled as a result of work-related physical injuries." 447 N.W.2d at 185 ; see Minn. Stat. § 363A.03, subd. 36. We also recognized that the phrase "qualified disabled person or job applicant," in the reasonable-accommodation provision "could be construed to include existing employees and employees who became disabled while employed, as well as job applicants, within the coverage of the [human rights act]." Karst , 447 N.W.2d at 185 (citing the statutory predecessor to Minn. Stat. § 363A.08, subd. 6 ). That Daniel's disability resulted from an earlier workplace injury, therefore, is immaterial to his discrimination claim under the human rights act.
More importantly, the damage to Daniel's individual dignity, as well as the loss of a fair employment opportunity because of the alleged failure to accommodate his physical disability, are alleged injuries distinct from the ankle injury suffered by Daniel many months before the dispute over accommodation arose. Cf. Reese v. Sears, Roebuck & Co. , 107 Wash.2d 563, 731 P.2d 497, 502 (1987) (distinguishing between a physical workplace injury and "a particular employer action taken months after" the employee became disabled), overruled on other grounds , Phillips v. City of Seattle , 111 Wash.2d 903, 766 P.2d 1099 (1989). As a distinct injury, the alleged discrimination falls outside the "industrial bargain" embodied in the workers' compensation act. Boryca v. Marvin Lumber & Cedar , 487 N.W.2d 876, 879 n.3 (Minn. 1992) ; accord City of Moorpark v. Super. Ct. of Ventura Cty. , 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752, 759 (1998) (concluding that disability-discrimination claim was not barred by workers' compensation exclusivity provision because it was a separate injury that fell "outside the compensation bargain").
Under the dissent's view, Daniel has no recourse for the City's alleged violation of the human rights act because his disability arose from a compensable workplace injury. This view conflates two distinct injuries, a work-related physical injury and the injury resulting from disability discrimination. According to the dissent, Daniel's recourse to the civil rights laws depends upon where , when , and how his disabling injury occurred, rather than upon the separate conduct of the City in allegedly failing to accommodate his disability.
The dissent's approach would immunize workplace discrimination, otherwise unlawful under the human rights act, simply because an employee's disability arose from a workplace injury. This approach would also leave a class of disabled employees without a remedy at the same time that others who have injuries or disabilities that are not work-related are fully protected from discrimination by employers. This result strikes us as both anomalous and wrong.[11]
*650 Critically, nothing in the language of the human rights act demonstrates that the Legislature intended an employee's civil right to be free from discrimination to hinge on where , when , or how the disability arose. Rather, the statute simply prohibits an employer from discriminating "against a person with respect to ... conditions ... of employment" because of that person's disability. Minn. Stat. § 363A.08, subd. 2(3). This prohibition includes an employer's failure to "make [a] reasonable accommodation to the known disability of a qualified disabled person." Id. , subd. 6(a). Under this plain language, whatever the source of the employee's disability, the human rights act protects employees from an employer's discriminatory response to that disability. Id. , subd. 2 ; see also Karst , 447 N.W.2d at 185 (acknowledging that the plain language of the human rights act "could be construed to include existing employees who became disabled while employed").
The broad remedies provided by the human rights act, including monetary damages, equitable relief, and civil penalties, further show that the personal and societal injuries caused by discrimination are different in nature and scope from the physical and mental work injuries that are compensable under the workers' compensation act. See Minn. Stat. § 363A.29, subds. 3-5 (setting forth available relief). The statute explicitly extends its anti-discrimination protections broadly to ensure that every person receives equal treatment without regard to race, color, creed, religion, national origin, sex, sexual orientation, marital status, familial status, age, disability, or public-assistance-beneficiary status. Minn. Stat. § 363A.08, subd. 2. This remedial scheme stands in sharp contrast to the more circumscribed statutory compensation provided by the workers' compensation act for personal injuries suffered at the workplace. See, e.g. , Minn. Stat. §§ 176.021, .061, subd. 7, .221, subd. 9.
Accordingly, reading the plain language of each statute, we conclude that the Legislature intended claims under the two exclusive acts to coexist. The human rights act exists to protect an employee's civil rights; it provides the exclusive remedy for discrimination injuries caused by any employer conduct that the statute defines as "unfair." Minn. Stat. § 363A.04. The workers' compensation act, by contrast, provides the exclusive remedy for financial and medical losses arising from a work-related "personal injury." Minn. Stat. § 176.011, subd. 16. Stated differently, even if injuries giving rise to claims under each act arose in the workplace, the acts hold employers liable for different types of injuries and provide different remedies. See, e.g. , Minn. Stat. § 645.16 (stating that a law should be construed to give effect to all its provisions). Given that the exclusionary provisions of the workers' compensation act and the human rights act do not extend to the same types of injuries, we find no conflict in allowing Daniel to seek compensation for conduct by the City that allegedly injured his civil rights simply because he also sought compensation for personal injuries that he suffered in the course of his employment.
This conclusion harmonizes the legislative intent behind each act. We have recognized that the "overriding purpose" of the human rights act is "to free society from the evil of discrimination that threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy." Wirig v. Kinney Shoe Corp. , 461 N.W.2d 374, 378 (Minn. 1990) (citation omitted) (internal quotation marks omitted). And one of the "avowed public policies" of the act has been "to foster the employment of all individuals in this state in accordance with *651 their fullest capacities." Id . (citation omitted) (internal quotation marks omitted). Daniel's claims under the human rights act, whatever their merits, seek to enforce legislative policies that aim to "change society's biases or prejudices" that emerge from "society's discriminatory tendencies." Id . at 378-79. Under the human rights act, the civil rights and dignity of all disabled employees, regardless of the source of their disability, will be protected from an employer's discrimination based on their disability, just like any other protected class. See id. at 378. Under the workers' compensation act, employees will continue to receive the certain but limited remedy for personal injuries, and employers will continue to have limited liability for personal injuries occurring at work. See Minn. Brewing Co. v. Egan & Sons Co. , 574 N.W.2d 54, 58 (Minn. 1998).
The holding of Karst is inconsistent with the plain language of the workers' compensation act and the human rights act, and the legislative policies reflected in those acts. We therefore overrule it. Failing to take this step would thwart the Legislature's intent to protect the civil rights of disabled employees under the human rights act. In addition, nothing in the plain language of either act compels us to conclude that the Legislature intended the workers' compensation act to foreclose an employee's separate cause of action under the human rights act for unlawful discrimination that violates an employee's civil rights.
In addition to our conclusion based on a comprehensive reading of the plain language of the statutes, a careful review of Karst shows that the grounds for its holding are weak. Our opinion acknowledged the plain language of the workers' compensation act and the human rights act, but did not identify any ambiguity in the language of either provision. Nor did the opinion explain how we could elevate the plain language of the workers' compensation act over the human rights act when the Legislature has long commanded that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded." Minn. Stat. § 645.16.[12] Further, as noted above, the sole foreign precedent relied upon in Karst was explicitly overruled by the Wisconsin Supreme Court. Karst , 447 N.W.2d at 186 (citing Schachtner v. Dep't. of Indus., Labor & Human Relations , 144 Wis.2d 1, 422 N.W.2d 906 (Ct. App. 1988), overruled by Byers v. Labor & Indus. Review Comm'n , 208 Wis.2d 388, 561 N.W.2d 678, 685 (1997) (noting that sole reliance on the workers' compensation statute would neither address nor deter employment discrimination)).
The development of anti-discrimination law, which has advanced considerably since Karst , also leads us to conclude that Karst must be overruled. Since we decided Karst in 1989, disability-discrimination law has significantly developed. In 1990, Congress passed the Americans with Disabilities Act. 42 U.S.C. §§ 12101 - 213 (2012). The Act prohibits discrimination against disabled employees, including an employer's failure to reasonably accommodate an employee's disability. Id. § 12112, *652 subds. (a), (b)(5)(A). As a federal right under the Supremacy Clause of the Constitution, employees can assert claims under the Americans with Disabilities Act for disability discrimination regardless of any exclusivity provision in a state workers' compensation act. Jones v. Gale , 405 F.Supp.2d 1066, 1087 (D. Neb. 2005) ; 9 Larson, supra , § 100.03[1]; cf. Karcher v. Emerson Elec. Co. , 94 F.3d 502, 509 (8th Cir. 1996) (holding that a state workers' compensation exclusionary provision cannot preempt the federally-created right to recover damages under Title VII's analogous anti-discrimination provisions).
Accordingly, Minnesota employers subject to the federal act are already exposed to the "seeds" of disability-discrimination claims that the dissent discusses. The Americans with Disabilities Act, however, does not apply to certain employers. Compare 42 U.S.C. § 12111(5)(A) (excluding employers with fewer than 15 employees from the act's definition of "employer"), with Minn. Stat. §§ 363A.20 -.26 (listing exemptions from liability for unfair discriminatory practices). Therefore, after this provision of the federal act took effect, employees working for employers with 15 or more employees could make claims under the workers' compensation act and under the Americans with Disabilities Act; those employees working for employers with fewer than 15 employees, on the other hand, had no recourse for disability-discrimination claims. See Edward T. Wahl & Jenny B. Wahl, Disability Discrimination & Workers' Compensation After the Americans with Disabilities Act: Sorting Out the Rights & Duties , 16 Hamline L. Rev. 81, 94-96 (1992) (discussing employees' potential claims after Karst ). Our decision today fills in this gap.[13]
Finally, our decision today comports with the decisions of many other state supreme courts-most issued after Karst -that have concluded that employment-discrimination claims are not barred by the exclusivity provision of state workers' compensation laws.[14] These decisions confirm our view that Karst is not persuasive, but instead has become an outlier.
Each of these decisions by other state supreme courts identified discrimination as a distinct injury that is remedied by the state's anti-discrimination act. See 9 Larson, supra , §§ 100.03[1], 104.05[5] (stating that, as a national "trend," "state antidiscrimination laws ... have been held immune *653 to exclusivity based upon the belief that state legislatures did not intend workers' compensation systems to subvert the important social policies embodied in civil rights laws"). The workers' compensation acts in these states have operated alongside state anti-discrimination acts, some for decades.
We observe, as other courts have, that although the injuries for which claims arise under each act are separate and distinct, the damages for a discrimination claim and payments for a workers' compensation injury could overlap in some cases. See, e.g. , Byers , 561 N.W.2d at 685 n.13 (holding "that an employe[e] may pursue a claim under the [Wisconsin Fair Employment Act] when the facts that are the basis for the discrimination claim might also support a [Wisconsin Workers' Compensation Act] claim," recognizing "the possibility of double recovery ... if claims are brought under both statutes," but declining to reach that issue); see also Reese , 731 P.2d at 503 (concluding that "any possible double recovery" problems from the two distinct wrongs can be "easily avoided").
To the extent that claims brought under the human rights act and the workers' compensation act give rise to duplicative liability, we agree that the employee cannot receive "double recovery for the same harm." Wirig , 461 N.W.2d at 379 (holding that a statutory cause of action under the human rights act and a claim for common-law battery could be brought together but a plaintiff could not recover duplicative money damages). Consequently, Daniel may bring concurrent claims under the workers' compensation act and the human rights act, but he may not receive double recovery under the two acts.[15]
In sum, Daniel's claims under the human rights act are not barred by the exclusive-remedy provision of the workers' compensation statute. Because Daniel's alleged injury under the human rights act arose not from his original ankle injury but from his employer's alleged discriminatory response to that injury, his injury is not a covered injury under the workers' compensation act. The two statutory schemes address distinct injuries. As a result, we conclude that no conflict exists between the exclusivity provisions of the workers' compensation act and the human rights act and we therefore overrule Karst 's conclusion to the contrary. Accordingly, we hold that the district court has subject-matter jurisdiction over Daniel's claims under the human rights act.
*654 CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand the case to the district court for further proceedings on the merits of Daniel's claims under the human rights act.
Reversed and remanded.
Dissenting, Anderson, J., Gildea, C.J.
DISSENT

The City describes "station shoes" as shoes that are worn "all day, every day, unless [they] need a specific shoe for a specific thing, like a technical rescue boot for a technical rescue, or a fire boot for [a] fire run." The station-shoe procedure requires that station shoes be "plain toe, black leather boots" that do "not interfere with response time."

Daniel further asserts that the City violated the workers' compensation act because the Department threatened to terminate his workers' compensation benefits if he complied with his doctor's prescription. See Minn. Stat. § 176.82, subd. 1. He also alleges that the City retaliated against him for seeking workers' compensation benefits and failed to provide continued employment when it was available. See id. , subd. 2. Our review is limited to considering Daniel's claims under the human rights act.

The district court stayed the case pending the appeal.

Issues regarding whether Daniel is a "qualified disabled person" and whether he established a prima facie case of disability discrimination under the human rights act are not before us. See Minn. Stat. § 363A.03, subd. 36.

Notably, this sole decision, Schachtner v. Dep't of Indus., Labor & Human Relations , 144 Wis.2d 1, 422 N.W.2d 906 (Ct. App. 1988), was later explicitly overruled by the Wisconsin Supreme Court. Byers v. Labor & Indus. Review Comm'n , 208 Wis.2d 388, 561 N.W.2d 678, 685 (1997). That the Wisconsin Supreme Court overruled this decision less than one decade after our decision in Karst is a relevant consideration in our analysis of the continuing vitality of Karst .

The City cites to Minnesota state and federal court decisions to support its argument. See Neumann v. AT & T Commc'ns. , 376 F.3d 773, 785 (8th Cir. 2004) ; see also Ciszewski v. Engineered Polymers Corp. , 179 F.Supp.2d 1072, 1084 n.10 (D. Minn. 2001) ; Braziel v. Loram Maint. of Way, Inc. , 943 F.Supp. 1083, 1102 n.20 (D. Minn. 1996) ; Benson v. Nw. Airlines, Inc. , 561 N.W.2d 530, 541 (Minn. App. 1997), rev. denied (Minn. June 11, 1997). These decisions, however, do not bind our court.

Subdivision 16 also states that a "personal injury" includes "[p]hysical stimulus resulting in mental injury and mental stimulus resulting in physical injury...." Minn. Stat. § 176.011, subd. 16.

The dissent's focus on the meaning of the phrase "on account of" is misplaced for a separate reason. Determining whether liability arises "on account of" a compensable workplace injury does not help to resolve the question raised here: whether "such injury" includes the injury caused by an employer's prohibited discriminatory conduct. Accordingly, our inquiry focuses on the meaning of "such injury." Minn. Stat. § 176.031.

Under section 176.82, subdivision 2, employees, through a civil action independent of workers' compensation benefits, can also be compensated for up to 1 year of lost wages if an employer discontinues an injured employee's employment without reasonable cause "when employment is available within the employee's physical limitations." Id. ; see also Schmitz v. U.S. Steel Corp. , 852 N.W.2d 669, 677 (Minn. 2014). Notably, however, section 176.82, subdivision 2, only provides an employee with compensation for the financial loss from losing a job because of a personal injury. Section 176.82, subdivision 2, does not address the separate public wrong caused by discrimination, which is addressed by the human rights act.

The Legislature first enacted the human rights act in 1955 (over 40 years after enacting the workers' compensation act). Act of April 19, 1955, ch. 516, 1955 Minn. Laws 802, 802-12. And the act's protections were extended to disability discrimination in 1973. Act of May 24, 1973, ch. 730, 1973 Minn. Laws 2158, 2159-62.

We note that the rationale of Karst could conceivably preclude other types of claims for physical injuries or mental impairments resulting from the stress of workplace discrimination. See Minn. Stat. § 176.011, subd. 16. Accordingly, employees who claim that workplace discrimination-whether based upon race, religion, national origin, sex, sexual orientation, or other protected status-also resulted in a physical injury, could find their claims barred by the exclusivity provision of the workers' compensation act under Karst .

Moreover, even if we had identified an ambiguity, Karst 's reliance on the legislative history of the human rights act was unsound. Karst concluded that the "legislature did not intend to authorize virtually every injured worker who is not rehired to bring a disability discrimination action." 447 N.W.2d at 185. This conclusion, however, was based on the absence of any discussion in the legislative history of the likely impact of the reasonable-accommodation provision on the workers' compensation act. Id. In this case, silence in the legislative record proves nothing.

We note that the human rights act provides a limited exemption for employers with fewer than 15 employees from the responsibility to comply with the reasonable-accommodation requirement. Minn. Stat. § 363A.08, subd. 6(a). The act does not, however, exempt any employer from the general prohibition against disability discrimination. Minn. Stat. § 363A.08, subd. 2 ; see also Minn. Stat. § 363A.03, subd. 16 (defining "employer" as "a person who has one or more employees").

See, e.g. , Whitson v. City of Hoover , 14 So.3d 98, 103 (Ala. 2009) (age discrimination); Davis v. Dillmeier Enters. , Inc. , 330 Ark. 545, 956 S.W.2d 155, 160-61 (1997) (disability discrimination); Moorpark , 77 Cal.Rptr.2d 445, 959 P.2d at 761 (disability discrimination); Meyers v. Chapman Printing Co. , 840 S.W.2d 814, 818-19 (Ky. 1992) (sex discrimination); Cox v. Glazer Steel Corp. , 606 So.2d 518, 520 (La. 1992) (disability discrimination); King v. Bangor Fed. Credit Union , 568 A.2d 507, 508-09 (Me. 1989) (disability discrimination); Boscaglia v. Mich. Bell Tel. Co. , 420 Mich. 308, 362 N.W.2d 642, 646 (1984) (sex discrimination), superseded on other grounds by statute , Mich. Comp. Laws Serv. § 37.2803 (LexisNexis 2010), as recognized in Eide v. Kelsey-Hayes Co. , 431 Mich. 26, 427 N.W.2d 488, 489-90 (1988) ; Anderson v. Save-A-Lot , Ltd ., 989 S.W.2d 277, 281 (Tenn. 1999) (disability discrimination); Reese , 731 P.2d at 503 (disability discrimination); Messer v. Huntington Anesthesia Grp. Inc. , 218 W.Va. 4, 620 S.E.2d 144, 160-61 (2005) (disability discrimination); Byers , 561 N.W.2d at 685-86 (sex discrimination).

The dissent complains that our decision leaves "much unsaid" about how to resolve double-recovery issues. This question is not one for an advisory opinion, but is one that trial courts are more than capable of answering based on the facts and circumstances in each particular case. See Goodman v. Boeing Co. , 127 Wash.2d 401, 899 P.2d 1265, 1268 (1995) ("No double recovery could occur in compensation for separate harms, and the trial court could deduct [workers' compensation] benefits from [human rights act] damages if necessary."); see also, e.g. , Miller v. Bolger , 802 F.2d 660, 665-66 (3d Cir. 1986) (separating workers' compensation damages from damages for workplace-retaliation claim under Title VII); Oswald v. Laroche Chems., Inc. , 894 F.Supp. 998, 1001 (E.D. La. 1995) (interpreting workers' compensation settlement as not precluding damages for mental anguish arising from discrimination); Nichols v. Frank , 732 F.Supp. 1085, 1089 (D. Or. 1990) (allowing backpay damages for Title VII discrimination claim to the extent it is not double recovery for workers' compensation claim); VECO, Inc. v. Rosebrock , 970 P.2d 906, 917 (Alaska 1999) (allowing damages for emotional distress caused by discrimination when not duplicative of damages under workers' compensation statute); Reese , 731 P.2d at 503 (noting that double recovery can be prevented by deducting workers' compensation benefits from discrimination damages).