# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0158

State of Minnesota,
Respondent,

vs.

Eloisa Rubi Plancarte,
Appellant.

**Filed February 5, 2024**
**Affirmed**
**Ross, Judge**
**Concurring specially, Schmidt, Judge**
**Dissenting, Bratvold, Judge**

Olmsted County District Court
File No. 55-CR-21-4279

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Schmidt, Judge.

## SYLLABUS

A woman's intentional display of her fully exposed breasts in the parking lot of a convenience store during routine business hours constitutes willful and lewd exposure of her private parts under Minnesota Statutes section 617.23, subdivision 1(1) (2020).

**OPINION**

**ROSS**, Judge

Police encountered a woman in a convenience store parking lot fully exposing her breasts and possessing cocaine. The state charged Eloisa Plancarte with indecent exposure and controlled-substance possession. She unsuccessfully moved the district court to dismiss the charges, arguing that her breasts are not "private parts" under the indecent-exposure statute and that prosecuting her for going topless but not prosecuting men who go topless violates the Equal Protection Clause. The district court found Plancarte guilty as charged and convicted her of indecent exposure. Plancarte appeals, arguing that the evidence is insufficient to prove that she violated the indecent-exposure statute and, alternatively, that prosecuting her for exposing her breasts violates her constitutional right to equal protection. Because a woman's fully exposed breasts are "private parts" under the statute and intentionally exposing them in the parking lot of a convenience store constitutes willful and lewd exposure, we reject her insufficient-evidence argument. And because a woman fully exposing her breasts is not similarly situated with a man exposing his chest, we reject her equal protection argument. We therefore affirm.

**FACTS**

Rochester police received a call at about 9:50 on a July 2021 evening, reporting that a woman was walking around the parking lot of a Kwik Trip convenience store with her breasts fully exposed. Officers arrived and saw Eloisa Plancarte, whom one of the officers recognized from having encountered her engaging in the same conduct earlier that week, walking in the lot with her shirt pulled up and her breasts fully exposed. Lights at the

gasoline pumps brightly illuminated the lot, and at least four cars were stationed at the pumps. Plancarte answered the officer's inquiry, "Why do you keep exposing yourself?" by responding, "Catholic girls do it all the time." She immediately added, "I dance at the biker club; I'm a stripper." The officer replied, "Well, you can't strip in the middle of the public." The officer arrested Plancarte and took her to jail, where she searched Plancarte's purse and found a vial containing a substance that tested positive as cocaine.

The state charged Plancarte with fifth-degree controlled substance possession under Minnesota Statutes section 152.025, subdivision 2(1) (2020), and indecent exposure under section 617.23, subdivision 1(1), which criminalizes "willfully and lewdly expos[ing one's] body, or the private parts thereof." Plancarte moved the district court to suppress the evidence of her cocaine possession and to dismiss both charges, raising three arguments premised on her contention that police improperly arrested her for violating the indecent-exposure statute. She argued first that female breasts are not "private parts" under the statute. She argued second that the statute is unconstitutionally vague. And she argued third that penalizing her under the statute violates her right to equal protection because only females are penalized for going topless in public. The district court expressly or implicitly rejected each argument and denied the motion.

The parties agreed to try the case to the district court on stipulated evidence under Minnesota Rule of Criminal Procedure 26.02, subdivision 3, preserving the issues Plancarte now raises in this appeal. The district court evaluated the stipulated evidence, including the body-camera footage of the arresting officer. It found Plancarte guilty on both charges. It convicted Plancarte of indecent exposure but stayed adjudication on the

3

controlled-substance charge on probationary terms. It sentenced Plancarte to serve 90 days in jail. Plancarte appeals.

## ISSUES

I.      Was the evidence sufficient to prove that Plancarte engaged in indecent exposure?

II.     Did the state violate Plancarte's constitutional right to equal protection by prosecuting her for publicly displaying her fully exposed breasts?

## ANALYSIS

Plancarte challenges her conviction of indecent exposure as unsupported by sufficient evidence. She argues alternatively that her prosecution violated her constitutional right to equal protection. Neither argument leads us to reverse.

## I

We are not persuaded to reverse by Plancarte's argument that the district court received insufficient evidence to convict her of indecent exposure. We review an appellant's evidence-sufficiency challenge by examining the evidence in the light most favorable to the guilty verdict to decide whether the facts and their inferences could permit the fact-finder to reasonably find the defendant guilty beyond a reasonable doubt. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). But Plancarte's evidence-sufficiency argument turns on the meaning of the statute of conviction, which calls us to interpret the statute *de novo*. *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019). Relevant here, the indecent-exposure statute establishes that "[a] person who commits . . . the following act[] in any public place, or in any place where others are present, is guilty of a misdemeanor: . . . willfully and lewdly exposes the person's body, or the private parts thereof." Minn. Stat.

4

§ 617.23, subd. 1(1). Plancarte's primary theory in the district court was that her breasts do not fall under the category of "private parts," and her primary theory on appeal is that her mere public display of them does not satisfy the statutory term, "lewdly." Plancarte did not expose her body, but only parts of it, so she engaged in indecent exposure only if the parts she exposed were "private parts" and she exposed them "willfully and lewdly." Our *de novo* review of these related elements leads us to reject her argument that her conduct did not offend the statute.

**A woman's fully exposed breasts are "private parts" for the purpose of applying the indecent-exposure statute.**

Plancarte asserts that she "disagrees" with the district court's decision that a woman's fully exposed breasts are "private parts" under the indecent-exposure statute. She deems the district court's decision on this point "irrelevant" and does not directly challenge it with a formal argument. The state defends the district court's decision as a proper application of the statute as a matter of law. We address the issue in this context.

The indecent-exposure statute nowhere defines "private parts." And neither the supreme court nor this court has directly addressed whether the term includes a woman's breasts. But we are confident that the legislature intended it to. Our objective when interpreting a statute is to determine legislative intent, and we determine legislative intent based on the statute's language alone, if it is unambiguous. *State v. Wiltgen*, 737 N.W.2d 561, 570–71 (Minn. 2007). The intent of the indecent-exposure statute is clear on its unambiguous language. And the policy of the statute is also clear: "to remedy the mischief of people lewdly exposing themselves to others, that is, to curb the offense or annoyance

5

or even fear others may experience when they view lewd conduct." *Fordyce v. State*, 994 N.W.2d 893, 900 (Minn. 2023) (emphasis omitted). We consider whether "private parts" includes fully exposed breasts in this framework.

The statutory context of the term "private parts" in Minnesota's indecent-exposure prohibition satisfies us that it includes female breasts. We are aided here by the canon against surplusage, an intrinsic canon that favors assigning each statutory word or phrase a distinct meaning. *State v. Thonesavanh*, 904 N.W.2d 432, 436–37 (Minn. 2017); *State v. Prigge*, 907 N.W.2d 635, 638 (Minn. 2018). The legislature expressly excludes public breastfeeding from prosecution for indecent exposure in a subdivision of the same statutory section. Minn. Stat. § 617.23, subd. 4 (2020) ("It is not a violation of this [indecent-exposure] section for a woman to breastfeed."). The breastfeeding exclusion is significant for our analysis, because we must "interpret a statute as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." *Rushton v. State*, 889 N.W.2d 561, 564 (Minn. 2017) (quotation omitted). If, as Plancarte argued to the district court, female breasts are categorically not "private parts," the legislature would have no need to expressly except breastfeeding from indecent exposure. That is, the caveat is meaningless unless breasts are within the statute's private-parts category. This distinction in Minnesota law draws us away from those jurisdictions that have looked primarily to indecent exposure in the common law to limit "private parts" to male and female genitalia. *See, e.g.*, *State v. Moore*, 194 Or. 232, 240–41 (1952) (observing that because the term "private parts" commonly "refer[s]

6

to the genital organs," "[a] woman's breasts do not[1] come within the designation"). Although this is a close issue, we hold that the district court correctly rejected Plancarte's contention that female breasts are not private parts under Minnesota's indecent-exposure law.[2]

We refer to this as a close issue only because another source of statutory interpretation—common usage—does not provide a clear answer here. Common usage is usually a trusty guide to interpreting statutory terms, because we should construe statutorily undefined words and phrases "according to their common and approved usage." Minn. Stat. § 645.08(1) (2022). One source to discern common usage is the dictionary, and relying only on the dictionary might favor Plancarte. *See Oxford English Dictionary* 516 (2d ed. 1991) (defining private parts as "the external organs of sex, the pudenda"). But investigating the common usage of the term "private parts" from additional sources leads to mixed results. For example, looking to references in Minnesota caselaw, we see that some individuals have used the term "private parts" in a manner that does not include breasts, *see State v. Morales-Mulato*, 744 N.W.2d 679, 683 (Minn. App. 2008)

---

[1] We observe a material distinction between two reporters regarding the quoted language. The version found within the regional reporter provides that a "woman's breasts *do* come within the designation." *State v. Moore*, 241 P.2d 455, 459 (Or. 1952) (emphasis added). But the official reporter provides that breasts "do *not*" constitute private parts. *Moore*, 194 Or. at 240–41 (emphasis added). We rely on the opinion as presented by the Oregon Supreme Court.

[2] This opinion addresses only the legal issues presented in this appeal, and it therefore does not attempt to discuss the hypothetical, outlier factual circumstances raised in the dissenting and concurring opinions. That is, because this case involves the allegedly lewd conduct of an adult female with exposed, intact breasts, we have no occasion to discuss the "non-lewd conduct of a breast cancer survivor who had her breasts surgically removed" or the "non-lewd conduct" of any other classes referenced in those opinions.

("Complainant testified that appellant touched her breasts and private parts . . . ."), *rev. denied* (Minn. Apr. 29, 2008), while others have used the term so as to include breasts, *see State v. Bryant*, 378 N.W.2d 108, 109 (Minn. App. 1985) ("By private parts, I mean her breasts and her vaginal or crotch area[.]"), *rev. denied* (Minn. Jan. 23, 1986). Likewise, indecency statutes of some other states expressly or implicitly include breasts within the private-parts category, like South Carolina, *see* S.C. Code Ann. § 16-3-600 (2022) ("'Private parts' means the genital area or buttocks of a male or female or the breasts of a female."), while others exclude them, like Ohio, *see State v. Parenteau*, 564 N.E.2d 505, 506 (Ohio 1990) ("Quite simply, a breast is not a 'private part' within the meaning of this section."). *See also People v. Garrison*, 412 N.E.2d 483, 490 (Ill. 1980) (reasoning that the term "private parts" are those areas "of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others" and concluding that "[t]hese areas include . . . female breasts") (quotation omitted). We therefore could not rely only on how the undefined term "private parts" is commonly used to resolve our issue, and our choice not to treat the legislature's breastfeeding caveat as surplusage directs our holding.

**A woman's intentional display of her fully exposed breasts in the parking lot of a convenience store during routine business hours is lewd conduct that violates the indecent-exposure statute.**

Plancarte's statutory argument has evolved on appeal, as she contends that the evidence was insufficient to prove that she engaged in indecent exposure because the state proved only that she exposed her breasts, not that she exposed them lewdly. It is true, as Plancarte argues, that we have previously held that to avoid running afoul of the right to

8

freedom of expression implied by the First Amendment, the state "must prove that conduct that is alleged to be lewd, lascivious, or indecent is legally obscene under" the United States Supreme Court's obscenity standard, citing *Miller v. California*, 413 U.S. 15, 24 (1973). *State v. Botsford*, 630 N.W.2d 11, 13 (Minn. App. 2001), *rev. denied* (Minn. Sept. 11, 2001); *see also State v. Duncan*, 605 N.W.2d 745, 750 (Minn. App. 2000), *rev. denied* (Minn. Apr. 18, 2000) (concluding that "lewd and lascivious behavior is synonymous with obscene behavior"). Although we did not say so explicitly, this implied obscenity element applies to expressive conduct specifically, not to conduct that is not expressive. This is because the First Amendment and article I, section 3, of the Minnesota Constitution protect only speech and expressive conduct. *See Koppinger v. City of Fairmont*, 248 N.W.2d 708, 712 (Minn. 1976). And not all nude conduct is expressive, *see City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion) ("Being 'in a state of nudity' is not an inherently expressive condition."). For our purposes, particularly in light of Plancarte's statement to police implicitly aligning her parking-lot conduct with her biker-bar dancing and stripping, we will assume for the sake of this analysis that her conduct at issue here was expressive. But we hold that her expressive conduct was nevertheless not constitutionally protected from prosecution on the theory that it was not obscene.

Plancarte builds her argument on an apparent misunderstanding of law, resting on the maxim that "nudity in and of itself is not obscene." She cites *State v. Casillas*, 952 N.W.2d 629, 639 (Minn. 2020), for this proposition, and she maintains that her conduct was not obscene because she "did not simulate sex acts, touch her breasts or body in a suggestive way, engage in a sexualized performance" or otherwise accentuate that her

9

breasts were exposed. The dissent adopts the same error. Plancarte misapplies *Casillas* by ignoring the circumstances of that case. The *Casillas* court stated that nudity is not by itself obscene in the context of nudity that was depicted in images and disseminated to others, *id.* at 634, not in the context of live, in-person nudity in a public place. In contrast to depicted nudity, public nudity by itself is not typically protected conduct at all. Contrary to Plancarte's implied premise that public nudity requires some form of performance to constitute obscenity, the state supreme court has instead stated, "[N]udity is not [constitutionally] protected expression, but conduct." *Koppinger*, 248 N.W.2d at 711. The *Koppinger* court reasoned that public "[n]udity was a traditional common-law crime," adding that "[t]he state has a valid interest in prohibiting public nudity." *Id.* As that court further observed, for First Amendment purposes, a genuine practical and legal distinction separates lewd public conduct from the "depiction of such conduct in print and film." *Id.* at 712. It therefore emphasized that the United States Supreme Court has "recognized a greater power in legislatures to suppress lewd conduct than to suppress depictions of the same conduct." *Id.*

Consistent with the *Koppinger* court's reasoning, we observe that the caselaw presents a spectrum of circumstances involving nudity, with some circumstances inviting significant constitutional protection and others having no protection at all. These circumstances fall roughly into four categories. The first category involves circumstances least likely to be held obscene and therefore most protected under the First Amendment: print and video depictions of nudity. *See, e.g.*, *Ginsberg v. New York*, 390 U.S. 629, 632–34 (1968) (addressing pornographic "magazines [that] contained pictures which depicted

10

female nudity" and observing that they "are not obscene for adults"). The second category receives less protection but is also unlikely to be treated as obscene. It involves live theatrical performances where nudity occurs only briefly in the context of a larger production, particularly where the nudity is subtle and presented in subdued fashion. *See, e.g.*, *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555, 562 (1975) (prohibiting city from denying a promotor's request to present the theatrical performance *Hair* as an attempt to prevent the show from reaching the public); *Se. Promotions, Ltd. v. City of Atlanta*, 334 F. Supp. 634, 637 (N.D. Ga. 1971) (describing limited nudity in *Hair*).

The third category on the spectrum, which has some but little constitutional protection, are in-person performances of nudity and sexualized behavior in liquor-serving strip clubs, where nudity and sexualized conduct are central and where those present are adults who know they will encounter this kind of behavior. In *Knudtson v. City of Coates*, for example, the state supreme court held that nude dancing in bars is protected, expressive conduct, but the court nevertheless validated a city ordinance requiring dancers to have their "buttocks, anus, breast and genitals covered with a non-transparent material." 519 N.W.2d 166, 167 n.2, 169 (Minn. 1994). And the United States Supreme Court put this type of behavior at the limit of constitutionally protected expression, reasoning, "[Barroom] nude dancing of the type at issue here is expressive conduct . . . [that] falls only within the outer ambit of the First Amendment's protection." *Erie*, 529 U.S. at 289. Fourth and finally are the cases that have resulted in no First Amendment protection at all. These include circumstances involving a live display of nudity in a place where nudity is abnormal and where unsuspecting members of the public, including minors, may be

11

present. *See, e.g.*, *State v. Prince*, 206 N.W.2d 660, 660 (Minn. 1973) (affirming indecent-exposure conviction of a man who "stood completely naked in the doorway of his home and attracted the attention of three passing high school girls"). The unprotected treatment of this latter circumstance follows the Supreme Court's reasoning that no protection extends to material that is "so offensive as to make it unacceptable under current community mores." *Manual Enterprises, Inc. v. Day*, 370 U.S. 478, 482 (1962). We can see where Plancarte's conduct, which is unacceptable under current community mores, fits on this spectrum.

We are satisfied that a fact-finder could conclude that Plancarte's conduct was obscene and therefore lewd and subject to prosecution as indecent under the statute. Although she referenced her biker-bar dancing and stripping to explain her behavior, the charged behavior occurred in a far more public place. We hold that her conduct does not draw even the low level of constitutional protection afforded to barroom nude dancing. Unlike the conduct in the barroom cases, Plancarte bared her breasts in the parking lot of a convenience store during routine business hours. She did it in a place where ordinary members of the public come to buy everyday merchandise. It is a place where nude exhibitionism is so shockingly out of the ordinary that no one can be surprised that the police were immediately summoned. Everyone doing business there would expect everyone else to be fully clothed. Adult patrons, not uncommonly accompanied by their children, regularly enter gas-station parking lots and conduct business both inside and outside the store. Plancarte's display of her private parts aligns with that of the appellant in *Prince*, 206 N.W.2d at 660, whose indecent-exposure conviction for having stood nude

12

in his own doorway the supreme court affirmed—implicitly treating the conduct as lewd and obscene. The district court had a sufficient factual and legal basis to treat Plancarte's exposure as lewd.

We decline Plancarte's and the dissent's urging to reach a different conclusion by analyzing her conduct under *Miller*, where the Supreme Court established a three-factor test to determine obscenity for expressive conduct:

> [1] whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; [2] whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and [3] whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24 (citations omitted). The *Miller* Court was addressing printed pornography, which it described as "a mass mailing campaign to advertise the sale of illustrated books, euphemistically called 'adult' material." *Id.* at 16. It did not involve live, in-person public nudity in a place where nudity is uncommon and unexpected under community norms, like the conduct in this case, and the opinion does not suggest that the test should be applied in this circumstance. By the terms of the test, the *Miller* factors apply to a "work" that "depicts or describes" nudity or sexual behavior. *Id.* at 24; *see also* Minn. Stat. § 617.241 (2022) (statutorily defining obscenity similarly as a "work" that, "as a whole, appeals to the prurient interest in sex and depicts or describes" sexual conduct "in a patently offensive manner"). Fifteen published Minnesota appellate decisions discuss or apply the *Miller* test—all of them involving sexual depictions, descriptions, or performances in places where adults gather in attendance. *See, e.g.*, *State v. Davidson*, 481 N.W.2d 51, 54–55

(Minn. 1992) (applying *Miller* to sale of pornographic magazines depicting adults); *State v. Carlson*, 216 N.W.2d 650, 651 (Minn. 1974) (applying *Miller* to film graphically portraying explicit sexual contact); *State v. Muccio*, 890 N.W.2d 914, 925–26 (Minn. 2017) (applying *Miller* to communication with a child describing sexual conduct); *Knudtson*, 519 N.W.2d at 169 (applying *Miller* to nude barroom dancing). None have applied the *Miller* test to live, open, in-person public nudity.

We observe that even if we were to apply the *Miller* test here, we are certain the result would be the same. The state supreme court specifically relied on *Miller* for the proposition that undergirds our decision today: "Because nudity is prevalent in advertising, movies and video, . . . it does not follow that nude dancing in bars should be similarly allowed. What distinguishes the latter is its physical immediacy for the onlooker." *Knudtson*, 519 N.W.2d at 169 (citing *Miller*, 413 U.S. at 26 n.8). The *Knudtson* court then characterized "[n]ude dancing in bars [as] expressive conduct, . . . a kind of 'hybrid speech,'" entitled to limited constitutional protection that is not violated even by a city ordinance altogether prohibiting nude dancing in bars. *Id.* We are certain that if a city can penalize or prohibit live, nude expressive conduct in an enclosed bar, the state can penalize live, nude non-expressive exposure in a Kwik Trip parking lot. We hold that the evidence was sufficient to allow the district court to find that Plancarte's intentional full exposure of her breasts in the convenience store parking lot during business hours was lewd conduct that violates the indecent-exposure statute.

**The dissent does not alter our conclusion that the evidence supports Plancarte's conviction.**

The dissenting opinion does not change our view that the evidence supports the indecent-exposure guilty verdict. But its well-reasoned analysis merits our response to highlight four points of departure.

The first point of departure is a matter of fact. The dissent bolsters its analysis by emphasizing that "the record evidence . . . includes no testimony from anyone who saw what Plancarte did" and stresses that the body-camera video of the arresting officer fails to establish lewd exposure of Plancarte's breasts. The dissent then expresses its "deep[] concern[] about the district court's decision to infer the exposure of Plancarte's breasts in their entirety" and suggests that we should more strictly scrutinize the evidence. But Plancarte has not argued on appeal that the evidence of her exposure was purely circumstantial. And we rely on the fact that the district court based its finding reasonably on the caller's report that a woman was in the parking lot with her breasts exposed, the officer's first-hand account corroborating that report, and the district court's own conclusions from the video recording. From this evidence the district court "reasonably infer[red that] the entirety of Ms. Plancarte's breasts had been exposed when the officer first observed her." The evidence also includes Plancarte's apparent corroboration, implicitly equating her parking-lot exposure to her conduct of dancing and stripping at a bar when the officer asked for an explanation. We have no reason to *sua sponte* disregard or question the district court's reasonable characterization of the evidence.

The second point of departure concerns the dissent's belief that our holding renders superfluous the statutory elements of "lewdly" and "public place." We believe, instead, that the same conduct may prove multiple elements. While it might not be lewd for a stripper to willfully expose her breasts in some public places, *see, e.g.*, *Botsford*, 630 N.W.2d at 15, we are confident that a fact-finder may conclude that engaging in that behavior is, by itself, obscene and therefore lewd when it occurs in a public place where the general public does not expect it, particularly but not exclusively where children are not uncommonly present. *See, e.g.*, *Prince*, 206 N.W.2d at 660 (affirming indecent-exposure conviction of man who merely "stood completely naked in the doorway of his home and attracted the attention of three passing high school girls"); *Ginsberg*, 390 U.S. at 634–35 (recognizing that state may ban the sale of magazines containing nudity to children even though they may not be obscene for adults); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 251–52 (2002) (observing that the government may "punish adults who provide unsuitable materials to children"). We are satisfied that fully exposing one's breasts in a convenience store parking lot at once meets the lewd and public-place elements.

Third, we think the dissent's analogy to dissimilar circumstances supports rather than contradicts our rationale. The dissent's discussion highlights the context-based application of the statute. For example, the dissent posits whether breast exposure "to varying degrees" at "the Academy Awards and New York Fashion Week" or "a woman without nipples who exposes her breasts" constitutes lewd behavior. The question becomes much easier if it is whether Plancarte's conduct would constitute lewd or obscene behavior if it had occurred at a school-bus stop or at an airport gate. Can we reasonably suppose that

the supreme court, which held that a man standing naked in the doorway of his home violates the indecent-exposure statute, *Prince*, 206 N.W.2d at 660, would reach a different conclusion if the naked man is instead walking or standing near a playground or in a parking lot? We are confident that the answer is no, because location is necessarily an essential part of the lewdness assessment. This is why the supreme court discussed the location of the nude dancing in *Knudtson*, 519 N.W.2d at 169, and why the United States Supreme Court discussed it in *Erie*, 529 U.S. at 289. As we have reasoned, location and circumstance are critical factors in every analysis in cases involving alleged, nudity-based obscenity.

And fourth, as a matter of fact and law, for largely the same reasons we disagree with the dissent's implication that Plancarte's conduct falls short of lewd exposure because the evidence "did not show that she directed attention to her breasts, lifted her shirt to show her breasts, made sexual movements or sounds, touched her breasts, touched any other person, or in any way tried to engage others." As a matter of fact, the district court, sitting as fact-finder in the stipulated-facts trial, observed that the district court judge in the omnibus hearing had previously found that, "[u]pon arrival, Officer Schroder observed Eloisa Plancarte . . . walking away from the Kwik Trip store towards the gas pumps with her shirt pulled up and her breasts exposed." The district court was free to infer that walking around a convenience store parking lot in this manner during regular business hours is conduct that proves Plancarte was directing attention to her breasts. Again, Plancarte's own statement resolves any doubt; by impliedly comparing her conduct to dancing and stripping at a biker bar, she provided sufficient basis for the district court to infer that she was

17

intentionally drawing attention to her breasts. And more important, as a matter of law, we reiterate that the maxim that "nudity in and of itself is not obscene" arose in the context of depictions of nudity, *Casillas*, 952 N.W.2d at 639, not open, live, in-person, public nudity in places where public nudity sharply contradicts societal norms of decency and community mores.

## II

Plancarte argues alternatively that the state violated her constitutional right to equal protection by prosecuting her for exposing her breasts, while the state would not prosecute a male for exposing his chest. The argument fails under established precedent. We have already rejected a similar equal-protection argument even in a circumstance where less modesty is expected than in a parking lot, holding that women who sunbathe topless are not similarly situated with men who sunbathe topless. *State v. Turner*, 382 N.W.2d 252, 255, 256 (Minn. App. 1986), *rev. denied* (Minn. Apr. 18, 1986). *Turner*'s holding has withstood the test of time, as "[t]he majority of courts considering equal protection challenges have upheld [indecent-exposure] laws prohibiting women, but not men, from exposing their breasts." *Free the Nipple - Springfield Residents Promoting Equal. v. City of Springfield*, 923 F.3d 508, 510 (8th Cir. 2019). Plancarte offers no convincing reason for us to upset that precedent here.

## DECISION

Plancarte's fully exposed breasts are "private parts" for the purpose of applying the indecent-exposure statute. Her intentional display of them in the parking lot of the Kwik

Trip constitutes lewd conduct that violates the indecent-exposure statute. And the state did not violate her right to equal protection by prosecuting her.

**Affirmed.**

**SCHMIDT**, Judge (concurring specially)

I concur in the result. I write separately because I share many of the concerns expressed by the dissent.

I would not decide whether a woman's breasts constitute "private parts" under the statute. Minn. Stat. § 617.23, subd. 1(1) (2020). Instead, I would affirm the district court's decision because I believe appellant "willfully and lewdly expose[d]" her "body." *Id.* Such a conclusion could apply equally to a shirtless man, depending on the actions of the individual and the context of the exposure.

The majority and the dissent agree on the elements for a person to be guilty of indecent exposure: a person intended to expose their body ("willfully") + lewd conduct ("lewdly") + actually engaging in some form of exposure ("exposes the person's body, or private parts thereof"). The majority and the dissent part ways on the interpretation and application of the statutory term "lewdly."

I join in the result to affirm appellant's conviction because "lewdly" cannot be analyzed under a subjective standard given that the Minnesota Supreme Court has held that "the offense of indecent exposure is a general-intent crime." *State v. Jama*, 923 N.W.2d 632, 637 (Minn. 2019). A different conclusion would allow a person to avoid criminal consequences under the indecent exposure statute by saying they are simply enjoying the feeling of the fresh air as they walk around a public park with no pants and underwear. Such conduct would clearly qualify as "lewd" under the indecent exposure statute because the purpose of the statute "aims to protect those subjected to the lewd conduct of others from being offended, annoyed, or fearful." *Fordyce v. State*,

994 N.W.2d 893, 901 (Minn. 2023). Given the supreme court's broad reading of the indecent exposure statute, *id.*, I cannot agree that "lewdly" should be read such that the state must prove the actor intended their conduct to be lewd.

The actions of appellant, combined with the context of her exposure, demonstrated that she "willfully" and "lewdly" exposed her body. The stipulated evidence includes a police report, which noted a police officer responded to "repeated calls for service" reporting "a female exposing her breasts while walking around the parking lot." The exposure occurred at a gas station, which—unlike a private night club that includes age restrictions—is open to the entire public without restriction. When the officer arrived on the scene, he observed appellant "exposing her breasts." The record further reflects that the officer recognized appellant from "two similar exposure priors from the last week." When the appellant saw the officer on this occasion, the district court found that appellant "quickly" tried to cover up her breasts.

In finding appellant guilty of indecent exposure, the district court specifically determined that appellant "exposed her breasts 'lewdly.'" In doing so, the district court found appellant "is an exhibitionist," a finding supported by the record given the officer recognized appellant from two prior indecent exposure incidents from the last week. The district court further found that "such exhibitionism is motivated by an urge for sexual arousal / gratification." Whether an act constitutes lewd conduct is a question to be found by the fact finder. *See Miller v. California*, 413 U.S. 15, 24 (1973) (stating the "trier of fact" must determine whether an act is obscene). In applying the sufficiency of the

evidence standard and viewing the evidence in the light most favorable to the verdict,[1] I cannot say that, on this record, the district court's finding that appellant "lewdly" "exposed her breasts" was unsupported by the evidence.

I also agree that we must reject appellant's Equal Protection arguments under binding precedent. We are bound by *State v. Turner*, which held that a citation for sunbathing topless in violation of an ordinance that prohibited exposing "female breast[s] below the top of the areola" did not violate the Equal Protection Clause. 382 N.W.2d 252, 253, 255-56 (Minn. App. 1986), *rev. denied* (Minn. Apr. 18, 1986). Since this court decided *Turner*, the Minnesota Legislature has amended the statute at least five times. *See* 1994 Minn. Laws ch. 636, art. 2, § 54, at 2220; 1995 Minn. Laws ch. 226, art. 2, § 31, at 1795-96; 1996 Minn. Laws ch. 408, art. 3, § 37, at 650-51; 1998 Minn. Laws ch. 367, art. 3, § 14, at 710-11; 1998 Minn. Laws ch. 369, § 2, at 796-97. When the legislature does not amend a judicial construction of a statute, the court's construction stands. *See W. Union Tel. Co. v. Spaeth*, 44 N.W.2d 440, 441 (Minn. 1950) ("The judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally." (quotation omitted)); *State v. Anderson*, 666 N.W.2d 696, 700 (Minn. 2003) ("We have recognized that when the legislature does not amend our construction of a statute, the court's construction stands."). Given that the legislature has amended the statute multiple times, yet refused to amend the law to provide for a blanket exemption for the exposure of women's breasts, I agree that we should not overturn *Turner*.

---

[1] *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016).

The legislature has, however, created an exemption in the statute for the exposure of a woman's breasts while breastfeeding. *See* 1998 Minn. Laws ch. 369, § 2, at 797. That provision remains in the statute today. *See* Minn. Stat. § 617.23, subd. 4 (2022) ("It is not a violation of this section for a woman to breastfeed."). The exemption represents a legislative policy decision to declare that neither the body part (a woman's breasts) nor the specific act (breastfeeding) constitutes "lewd" conduct. Because the statute provides an exemption for the exposure of a woman's breasts while breastfeeding but has not exempted the exposure of a woman's breasts in any other context, the legislature intended the statute to apply to the circumstances in this case—a woman "willfully" and "lewdly" exposing her body in public. Minn. Stat. § 617.23, subd. 1(1).

I add the above reasoning for context as to why I join in affirming appellant's conviction. I also write separately, however, because I share the valid and well-reasoned concerns articulated by the dissent. Like the dissent, I am concerned that this statute could, on its face, be improperly used to attack non-lewd conduct of transgender women and transgender men. The statute could also be interpreted to criminalize non-lewd conduct of a breast cancer survivor who had her breasts surgically removed. These specific issues are not before us in this case because appellant did not contend the statute is "vague" or "overbroad" in this appeal. Nonetheless, these concerns are not currently accounted for in the statute. It may be time for the Minnesota Legislature to re-examine this law and determine whether additional exemptions—beyond breastfeeding—are warranted. But given the language of the current version of the statute, I concur in the result.

**BRATVOLD**, Judge (dissenting)

I respectfully dissent. After a stipulated-evidence trial, the district court convicted appellant Eloisa Rubi Plancarte of indecent exposure under Minn. Stat. § 617.23, subd. 1 (2020), and granted a stay of adjudication on fifth-degree unlawful possession of a controlled substance under Minn. Stat. § 152.025, subd. 2(1) (2020). In this appeal, Plancarte raises two legal challenges to her conviction for indecent exposure. I would reverse.

First, to sustain Plancarte's indecent-exposure conviction, the state must prove beyond a reasonable doubt that she "willfully and lewdly" exposed her body or private parts in a public place. Minn. Stat. § 617.23, subd. 1(1). The relevant statute and binding precedent require the state to prove that Plancarte's conduct was lewd and, more specifically, obscene. The record evidence—which includes no testimony from anyone who saw what Plancarte did—fails to prove that Plancarte's exposure of her breasts was lewd or obscene. Thus, I would reverse her conviction.

Second, Plancarte argues that the interpretation and application of Minn. Stat. § 617.23 (2020) to criminalize nude female breasts and not male breasts violates the right to equal protection under the United States and Minnesota Constitutions. Because I would reverse her conviction based on the legal insufficiency of the evidence, I need not reach this issue. If I were to consider the issue, however, I would not rely on this court's decision in *State v. Turner* for reasons that I explain below. 382 N.W.2d 252 (Minn. App. 1986), *rev. denied* (Minn. Apr. 18, 1986).

**I. The evidence is not sufficient to sustain Plancarte's conviction for lewdly exposing her "body, or the private parts thereof."**

Plancarte argues that the evidence is not sufficient to prove that she "lewdly" exposed her breasts. We review an appellant's sufficiency challenge by examining the evidence in the light most favorable to the guilty verdict or finding to decide whether the facts and the inferences from them could permit the fact-finder to reasonably find the defendant guilty beyond a reasonable doubt. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). "A sufficiency-of-the-evidence claim that turns on the meaning of the statute under which a defendant has been convicted" is a question of law that is reviewed de novo. *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019).

Before determining the sufficiency of the evidence, I interpret the language of the indecent-exposure statute. Second, I consider the majority's interpretation of this statute. Third, I review the record evidence to determine whether it is sufficient to sustain Plancarte's conviction.

**A. The plain meaning of "lewdly exposes" in Minn. Stat. § 617.23, subd. 1, criminalizes obscene exposure of the body.**

Minnesota's indecent-exposure law provides:
> A person who commits any of the following acts in any public place, or in any place where others are present, is guilty of a misdemeanor:
> (1) willfully *and lewdly* exposes the person's body, or the private parts thereof;
> (2) procures another to expose private parts; or

> (3) engages in any open or gross lewdness or lascivious behavior, or any public indecency other than behavior specified in this subdivision.

Minn. Stat. § 617.23, subd. 1 (emphasis added). This is a general-intent crime, which means that the state must "prove that the offender committed the prohibited act volitionally or deliberately, as opposed to accidentally." *State v. Jama*, 923 N.W.2d 632, 637 (Minn. 2019) (interpreting Minn. Stat. § 617.23, subd. 1(3) (2018)).

The state charged Plancarte under subdivision 1(1). As generally explained in the concurrence, the crime of indecent exposure in subdivision 1(1) has four elements: (1) willful exposure, (2) lewd exposure, (3) of the person's body or private parts, (4) in any public place or any place where others are present. Minn. Stat. § 617.23, subd. 1(1). On appeal, Plancarte does not dispute the first, third, or fourth elements. Plancarte challenges only whether the state sufficiently proved that she "lewdly expose[d]" her breasts. *Id*. Her challenge, therefore, requires this court to interpret what it means to "lewdly" expose the body under Minn. Stat. § 617.23.

The legislature has not defined "lewdly." "[O]ur objective in statutory interpretation is to effectuate the intent of the legislature." *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019) (quotation omitted); *accord* Minn. Stat. § 645.16 (2022). If "the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and [appellate courts] apply the statute's plain meaning." *Stay*, 935 N.W.2d at 430 (quotation omitted). "To determine whether a statute is ambiguous, we first construe words and phrases in the statute according to rules of grammar and according to their common and approved usage." *Fordyce v. State*,

994 N.W.2d 893, 897 (Minn. 2023) (quotations omitted). "When a statute does not define terms, we may look to the dictionary definitions of those words and apply them in the context of the statute to determine whether the phrase has a plain and unambiguous meaning." *Id.* (quotation omitted).

Our caselaw has identified a dictionary definition of lewd and applied it to a law similar to section 617.23. In *State v. Botsford*, we "concluded that the terms lewd and lascivious are synonymous with obscene" by relying on a definition from *Black's Law Dictionary*. 630 N.W.2d 11, 17 (Minn. App. 2001), *rev. denied* (Minn. Sept. 11, 2001).[1] Botsford was a dancer at a nightclub charged with violating a city ordinance that criminalized "lewd or lascivious conduct" or "indecent or lascivious exposure of the human body or any part thereof." *Id.* at 14. The district court denied Botsford's motion to dismiss the charge and certified a question to this court—whether the state was required "to prove that her performance was legally obscene under *Miller v. California*," 413 U.S. 15 (1973). *Id.*

This court answered affirmatively, holding first that the regulation of lewd and lascivious conduct "must conform to the guidelines set forth in *Miller*." *Id.* at 17. We then noted that "[s]omething that is sexually expressive is not necessarily obscene," and therefore, "application of the *Miller* obscenity standards is the only way to ensure that the

_____

[1] Using another dictionary, this court rejected a vagueness challenge to the "open or gross lewdness or lascivious behavior" language in Minn. Stat. § 617.23 (1984) and reasoned that the "commonly accepted definition of lewdness is the quality of being openly lustful or indecent." *City of Mankato v. Fetchenhier*, 363 N.W.2d 76, 79 (Minn. App. 1985) (citing *Webster's New Universal Unabridged Dictionary* 1041 (2d ed. 1983)).

regulation . . . conforms to the constitution."[2] *Id.* We affirmed that the "test for obscenity" is set out in *Miller* and "must be applied to *all* cases involving allegations of lewd and lascivious behavior." *Id.* at 16 (emphasis added) (citing *Miller*, 413 U.S. 15.).[3]

Based on the statutory language and prior precedent from this court, I conclude that the second element of the crime of indecent exposure requires the state to prove beyond a reasonable doubt that Plancarte's intentional exposure of her breasts in a store parking lot was obscene. Below, I discuss relevant caselaw about what is evidence of obscene conduct. Before I turn to the evidence, however, I examine the majority's interpretation of the indecent-exposure statute.

### B.     The majority's interpretation does not comport with the plain meaning of "lewdly exposes" in Minn. Stat. § 617.23, subd. 1.

The legislature's decision to require lewd conduct for the crime of indecent exposure is significant. The legislature could have criminalized public nudity in all forms,

---

[2] In *Botsford*, we noted that "displays of nonobscene, sexual conduct are [not] beyond the reach of government regulation" when there are "sufficiently important governmental interest[s] in regulating the nonspeech," but in doing so, we narrowly pointed to statutes regulating "the exchange of money for certain sexual acts." *Id.* at 17-18 (quotation omitted).

[3] While *Botsford* explained its reasoning by quoting *Miller*, other Minnesota precedent reached the same conclusion without discussing *Miller*. In *State v. Duncan*, this court considered whether Minn. Stat. § 617.23(a)(3) (1996) was unconstitutionally overbroad for prohibiting "open or gross lewdness or lascivious behavior." 605 N.W.2d 745, 747 (Minn. App. 2000), *rev. denied* (Minn. Apr. 18, 2000). We reasoned that the nude dancers and patrons convicted under the statute were not engaged in "protected First Amendment conduct" because we could not distinguish "lewd and lascivious behavior from what is otherwise identified as obscene." *Id.* at 749. We specifically cited *Black's Law Dictionary*, which defined both "lewd" and "lascivious" as "obscene." *Id.* Because obscene behavior, conduct, or speech is not protected, we reasoned that it may be regulated. *Id.* at 750.

but it chose to criminalize willfully and lewdly exposing the body in public. Yet the majority opinion does not attempt to articulate the plain meaning of lewd. I disagree that Minn. Stat. § 617.23 (2020) criminalizes a "live display of nudity in a place where nudity is abnormal and where unsuspecting members of the public, including minors, may be present" as the majority opinion contends. In my opinion, the majority's conclusion misses the mark for four reasons.

First, I believe that the majority's interpretation excises "lewdly" from the indecent-exposure statute and renders the term void because "lewdly exposes" is simply "exposes" in public. Minn. Stat. § 617.23, subd. 1(1). Yet caselaw requires that we "interpret a statute as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will he held superfluous, void, or insignificant." *Rushton v. State*, 889 N.W.2d 561, 564 (Minn. 2017) (quotations omitted). The indecent-exposure statute has four elements. I read the majority's rule of law as "zeroing out" the lewd-exposure element.

Second, the majority's interpretation of the statute conflates the public-place element with the lewd-exposure element. The legislature defined this crime to have both a public-place element *and* a lewd-exposure element. "Though the sufficiency-of-the-evidence standard is very deferential to the verdict, the due process clause still requires that each element of the charged crime be proven beyond a reasonable doubt." *State v. King*, 990 N.W.2d 406, 416 (Minn. 2023). By choosing the word "lewdly," the legislature has required more than that a person intend to be nude in public.

Third, I cannot subscribe to a rule of law that holds a "woman's intentional display of her fully exposed breasts" in a public place "constitutes willful and lewd exposure of her private parts" under Minn. Stat. § 617.23, subd. 1(1), as the majority opinion does. Setting aside equal-protection concerns about adding a gender classification to neutral language as part of our statutory interpretation, this rule raises more questions about criminal conduct than it clarifies.

What are "fully exposed" breasts? Does "fully" require that the nipple be exposed? If so, how much of the nipple? What if the nipple is visible through sheer clothing? Every year, viewers of the Academy Awards and New York Fashion Week observe a variety of fashions that expose breasts to varying degrees. Is a woman wearing similar clothing in a convenience-store parking lot lewdly exposing her body? How does the majority's rule apply to a person whose gender identity differs from their sex assigned at birth? Or to a person whose breasts have been surgically altered, which happens for a wide variety of reasons? Is a woman without nipples who exposes her breasts lewdly exposing them? Is a transgender woman who has not physically transitioned her breasts engaged in criminal conduct when going topless?

Fourth, because there is ample Minnesota authority holding that lewd is synonymous with obscene, I would follow this precedent to test the sufficiency of the evidence against Plancarte. I am not convinced that the legislature intended to criminalize exposed breasts because it adopted a breastfeeding exemption. Minn. Stat. § 617.23, subd. 4 ("It is not a violation of this section for a woman to breastfeed."). The legislature's decision to exempt breastfeeding from criminal sanction means that breastfeeding is not

lewd. The legislature did not say that nude breasts are lewd if those breasts are not involved in breastfeeding.

I do not believe that *Botsford* is limited to nude dancing. The Minnesota Supreme Court has used the *Miller* test to interpret criminal statutes recently and for decades. *See, e.g.*, *State v. Muccio*, 890 N.W.2d 914, 925 (Minn. 2017) (applying the *Miller* standard for obscenity and holding that a criminal statute was not overbroad). It is true that caselaw has accorded greater protection to depictions of nudity and nude dancing under the First Amendment than it has to mere nudity by holding that a blanket prohibition on public nudity is constitutional as a content-neutral restriction on symbolic speech. *See, e.g.*, *Erie v. Pap's A.M.*, 529 U.S. 277, 301-02 (2000) (plurality opinion) (upholding a ban on public nudity as content neutral, including a law requiring that "pasties" and "G-strings" be worn over specific body parts); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-67 (1991) (plurality opinion) (upholding ban on public nudity).[4]

But the state's ability to constitutionally prohibit all public nudity does not guide a court's analysis of this indecent-exposure statute because it is not content neutral. Section 617.23 does not prohibit all public nudity. Minnesota has criminalized "lewdly" exposing a person's body in public. Minn. Stat. § 617.23, subd. 1(1). Nor is it helpful to focus on whether the alleged lewd exposure is "live, open, in-person" nudity or in print or video, as does the majority. The indecent-exposure statute governs lewd or obscene

---

[4] I note that the Minnesota Supreme Court has struck down as unconstitutionally overbroad a law prohibiting all nudity in places for dancing and tobacco sales, among other places. *Koppinger v. City of Fairmont*, 248 N.W.2d 708, 709-10 (Minn. 1976) (holding that city ordinance was "unconstitutional on its face because of substantial over-breadth").

exposure of the body—whether via depictions, dancing, or otherwise. Indeed, our supreme court has specifically held that an adult who transmits a likeness of the adult's own genitals during simultaneous online communication may be convicted for lewd exposure under section 617.23, subdivision 1. *State v. Decker*, 916 N.W.2d 385, 388-89 (Minn. 2018). The supreme court rejected the argument that indecent exposure criminalizes only exposure of "actual genitals." *Id.* at 388.

For the reasons stated, I would examine the sufficiency of the state's evidence against Plancarte to determine whether the state proved her conduct was obscene.

### C.     The evidence against Plancarte is not sufficient to sustain the conviction.

To determine whether speech is obscene, Minnesota courts apply the three-part test the Supreme Court articulated in *Miller*. *Botsford*, 630 N.W.2d at 16-17. Under this test, the fact-finder must determine

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.[5]

*Miller*, 413 U.S. at 24 (quotations omitted); *accord Botsford*, 630 N.W.2d at 17.

Fundamentally, the *Miller* test, along with related caselaw, makes a simple point very clear: Nude is not lewd. Both the U.S. and the Minnesota Supreme Court have held

---

[5] Plancarte raises no challenge to the district court's determination of the third part of *Miller*, artistic value, but she maintains that the district court erred in its findings relating to the first two parts of *Miller*: that her conduct appealed to the prurient interest and that it was patently offensive.

that "nudity alone is not enough to make material legally obscene under the *Miller* standards." *Jenkins v. Georgia*, 418 U.S. 153, 161 (1974); *accord State v. Casillas*, 952 N.W.2d 629, 639 (Minn. 2020) ("[N]udity 'in and of itself is not obscene.'" (quoting *Koppinger*, 248 N.W.2d at 712 n.3)). A fact-finder's finding of obscenity is "subject in borderline cases . . . [to an appellate] court's ultimate power independently to review constitutional claims." *State v. Welke*, 216 N.W.2d 641, 647 (Minn. 1974); *see also Jenkins*, 418 U.S. at 160 ("Even though questions of appeal to the prurient interest or of patent offensiveness are essentially questions of fact, it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is patently offensive." (quotation marks omitted)).

I conclude that the state's evidence—at best—proved only that Plancarte willfully exposed nude breasts in public. No record evidence establishes that the exposure was lewd. The state's stipulated evidence of Plancarte's conduct on July 28, 2021, was twofold. First, the state submitted a police report that briefly describes an anonymous report to law enforcement "of a female exposing her breasts while walking around the parking lot" of a convenience store. This is the entirety of what was reported about Plancarte's conduct before the officer arrived. The police report also includes the officer's observations of Plancarte, repeating that she was "exposing her breasts." The police report does not mention Plancarte raising or lowering her shirt. Thus, the police report does not prove how much of Plancarte's breasts were exposed, for how long, or what she was doing apart from

walking in a parking lot. Even the district court appears to have recognized that this was not lewd exposure.[6]

The district court relied heavily on a second piece of evidence, the police officer's body-camera video, to find that Plancarte exposed her *entire* breast, which led it to conclude that the exposure was lewd. The district court found that the video does not "clearly" show Plancarte's exposed breasts. The district court stated that the body-camera video depicts Plancarte "after dark, from the side and at a distance." In my opinion, the video includes close-ups of Plancarte and shows—throughout Plancarte's interaction with the arresting officer—that Plancarte was fully clothed and her breasts were not visible.

I acknowledge that the state does not need to rely on the body-camera video. A caller reported seeing Plancarte's exposed breasts. But in the absence of sufficient evidence of lewd conduct from the caller's report, of which we have only a written summary in the police report, it is significant the district court inferred that Plancarte exposed her entire breast based on the body-camera video. The district court first found the body-camera video shows that Plancarte "quickly pulled *down* her shirt when she saw" the officer. (Emphasis added.) From this, the district court stated that "one reasonably *infers* the entirety of Ms. Plancarte's breasts had been exposed when the officer first observed her."[7] (Emphasis added.)

---

[6] The district court stated that "[p]ublic exposure of some parts of women's breasts is plainly not criminal. If the law were otherwise, the annual display of decolletage at the Academy Awards would result in mass arrests."

[7] Plancarte's brief to this court states that "this court may accept for purposes of sufficiency review that her entire breast was uncovered." While I respect her decision to concede an

This is very thin reasoning given neither the caller, nor the police officer, nor the video describes or depicts Plancarte's "entire" breast as exposed. Because the district court inferred that Plancarte exposed her breasts from her subsequent conduct, the state proved its case, in part, using circumstantial evidence. Under applicable caselaw, appellate courts scrutinize the sufficiency of circumstantial evidence to ascertain whether it supports the verdict and will reverse if the evidence also supports a reasonable alternative hypothesis. *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017) ("To sustain the conviction, the circumstances proved, when viewed as a whole, must be consistent with a reasonable inference that the accused is guilty and inconsistent with any rational hypothesis except that of guilt."). This court should, at a minimum, examine the record evidence in light of this caselaw and consider whether Plancarte pulled down her shirt for another reason, such as tucking her shirt into her skirt.

The majority relies on a different part of the body-camera recording to conclude that Plancarte's conduct was lewd: the arresting police officer's conversation with Plancarte. The majority describes this conversation as showing that Plancarte "implicitly align[ed] her parking-lot conduct with her biker-bar dancing and stripping." I disagree with this

---

issue, I am deeply concerned about the district court's decision to infer the exposure of Plancarte's breasts in their entirety based on this extremely limited circumstantial evidence. I consider whether the record supports this characterization of the evidence because I believe doing so is consistent with the standard of review for sufficiency of the evidence. *See Lapenotiere v. State*, 916 N.W.2d 351, 360-61 (Minn. 2018) (describing our review of direct evidence as "painstaking" (quotation omitted)); *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (describing our review of circumstantial evidence as "heightened").

D-12

description of the record. I first note that the district court's factual findings do not mention what Plancarte said to the officer.

Second, the body-camera video shows that, when the officer approached Plancarte, Plancarte said that she had no warrants and the officer responded that Plancarte was "doing the same thing that you've been doing." Plancarte stated that she would "just go to jail freely." Plancarte then walked with the officer to the squad car and asked if the officer wanted to "check" her. As the officer patted her down, they continued to talk.

> OFFICER: Why do you keep exposing yourself?
> PLANCARTE: I think Catholic girls do it all the time . . . .
> OFFICER: I don't think that's how it works.
> . . . .
> PLANCARTE: Can you just tell me if I have to walk home . . . ?
> OFFICER: Yeah, well your breasts were just hanging out.
> PLANCARTE: I dance, I dance at the biker club, I'm a stripper.
> OFFICER: Well, you can't strip in the middle of public.
> PLANCARTE: They should account for me . . . They should account for me at the club, shouldn't they?

In my opinion, Plancarte's remarks to the officer do not show that she admitted to obscene behavior similar to stripping in the parking lot. Plancarte's comment about being a stripper seems to relate to being comfortable with her breasts "hanging out" or concern about going to jail and missing work—although all court documents in this record state that Plancarte is homeless and unemployed.[8] At the very most, this conversation is circumstantial

---

[8] Indeed, in a September 2022 order following an examination under Minn. R. Crim. P. 20.01, the district court concluded that it had reason to doubt Plancarte's competency and suspended proceedings against Plancarte while a second examiner was appointed. Based on the second examination, the district court allowed proceedings to resume.

evidence about what Plancarte was doing in the parking lot. Because it is reasonable to infer from the stripper comment that Plancarte was not referring to her parking-lot conduct at all, I conclude that the comment is not sufficient evidence of her guilt.

To summarize my view of the evidence, after reviewing the police report and viewing the body-camera video, I conclude that the state failed to prove beyond a reasonable doubt that Plancarte's conduct was obscene.[9] Under *Miller*, the state must show that Plancarte's conduct "appeal[ed] to the prurient interest" or was "patently offensive." *Botsford*, 630 N.W.2d at 17. Here, the state proved only that Plancarte exposed her breasts and did not prove that she lewdly exposed her breasts. I disagree with the concurrence that this view of the evidence focuses on Plancarte's subjective intent and implies that a defendant may excuse obscene conduct by saying they are "enjoying the feeling of the fresh air as they walk around a public park with no pants and underwear." The *Miller* test, as explained in *Botsford*, examines a defendant's conduct, not their subjective intent. *Id*. The state's case against Plancarte is deficient because it failed to prove obscene conduct. This is best seen by comparing the state's evidence against Plancarte with the conduct of others whose convictions for indecent exposure were reviewed on appeal and affirmed.

In *Jama*, the appellant was convicted of indecent exposure for "approach[ing] a family gathering in the front yard of a home" and "pull[ing] out his penis and fondl[ing] it

---

[9] *See Jenkins*, 418 U.S. at 161 ("Our own viewing of the film satisfies us that 'Carnal Knowledge' could not be found under the *Miller* standards to depict sexual conduct in a patently offensive way . . . . There is no exhibition whatever of the actors' genitals, lewd or otherwise, during these scenes [of sexual conduct]. There are occasional scenes of nudity . . . .").

with his hands as he gyrated his body in a manner that simulated sexual intercourse." 923 N.W.2d at 634, 637 (holding that the indecent-exposure statute creates a general-intent crime). In *State v. Stevenson*, the appellant was convicted of indecent exposure for masturbating while sitting in the driver's seat of his parked car facing a playground area only ten to 15 feet away. 656 N.W.2d 235, 237 (Minn. 2003) (holding that intent to be indecent may be inferred when conduct is performed in a place so public and open that it is likely to be observed). In *Duncan*, dancers were convicted of indecent exposure for being fully nude and making "intimate physical contact on or near the patrons' faces, including contacts while wrapping their legs around the patrons' necks." 605 N.W.2d at 747 (holding that the indecent-exposure statute does not require specific intent to offend an unwilling audience). In *State v. Schramel*, dancers were convicted of indecent exposure for "rub[bing] their bare breasts on the face or head of the patron or wrap[ping] their legs around the patron's head." 581 N.W.2d 400, 401, 403 (Minn. App. 1998) (holding that intent to offend the sensibilities of others is not an element of indecent exposure), *rev. denied* (Minn. Sept. 22, 1998). The state's case against Plancarte did not prove any obscene conduct analogous to that discussed in other Minnesota caselaw enforcing the indecent-exposure statute.

I also do not believe that the evidence in Plancarte's case is sufficient based on the supreme court's analysis in *State v. Prince*, a per curiam opinion affirming an indecent-exposure conviction based on evidence that the appellant "stood completely naked in the doorway of his home and attracted the attention of three passing high-school girls by saying, 'Hi, girls.'" 206 N.W.2d 660, 660 (Minn. 1973). As described in *Prince*,

the appellant was "completely naked" and "endeavored to attract the attention of passers-by." *Id.* There is no parallel evidence against Plancarte.

The district court found that Plancarte was "not engaged in any type of overt public sexual activity or sexual contact with others in addition to the exposure itself." This finding is inconsistent with the district court's comparison of Plancarte's conduct with that of a male "flasher" who, according to the district court, "opens his overcoat to surprise passers-by with a view of his unclothed genitalia." This hypothetical is like the appellant in *Prince* and unlike Plancarte—a "flasher" attempts to force others to look at genitalia. Flashing is patently offensive conduct well beyond nudity. The state's evidence against Plancarte did not show that she directed attention to her breasts, lifted her shirt to show her breasts, made sexual movements or sounds, touched her breasts, touched any other person, or in any way tried to engage others.[10]

---

[10] The district court also erred in its analysis of the state's evidence against Plancarte because it appears to have equated obscene with sexual. Caselaw defines the first part of *Miller*—prurient interest—as a "morbid, shameful interest in sex." *State v. Davidson*, 481 N.W.2d 51, 59 (Minn. 1992); *see also Jenkins*, 418 U.S. at 161 (holding that the film *Carnal Knowledge* was not obscene because it did not "depict sexual conduct in a patently offensive way"); *Casillas*, 952 N.W.2d at 639 ("'Sexual expression' can be 'indecent but not obscene' and therefore 'protected by the First Amendment.'" (quoting *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)).

The district court found that Plancarte "is an exhibitionist" and stated that "one gathers from the evidence that she feels some compulsion to publicly expose her sexual parts—on this occasion her breasts." Without citing any evidence, the district court then offered the opinion that "sexual arousal and/or gratification underlies and explains the behavior" and described it as "something of a prurient, sexual nature." I agree with the concurrence that the district court appears to have based this finding on evidence that Plancarte previously has been charged with indecent exposure. Because caselaw instructs that sexual conduct is not necessarily obscene conduct, the district court erred in its reasoning.

Because this court has repeatedly defined lewd to mean obscene and has adopted the *Miller* three-part test to determine whether conduct is lewd, I would apply this standard to the state's evidence against Plancarte and, finding the evidence insufficient to sustain her conviction, reverse.

## II.     Plancarte's equal-protection challenge is not resolved by existing precedent.

Under the United States and Minnesota Constitutions, all individuals are guaranteed the right to "equal protection of the laws." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted); *see also* U.S. Const. amend. XIV; Minn. Const. art. I, § 2. The constitutionality of a statute is determined de novo. *State v. Lee*, 976 N.W.2d 120, 126 (Minn. 2022). Plancarte argues that her equal-protection rights were violated by her conviction for indecent exposure of her breasts because men are "routinely allowed to engage" in similar conduct "all across Minnesota" without any concern or prosecution for violating the same statute. She is making an "as-applied" challenge. *State v. Richmond*, 730 N.W.2d 62, 71 (Minn. App. 2007) (quotation marks omitted), *rev. denied* (Minn. June 19, 2007).

An appellate court, however, need "not reach constitutional issues if the appeal can be resolved on other grounds." *Kimberly-Clark Corp. v. Comm'r of Revenue*, 880 N.W.2d 844, 849 (Minn. 2016). Because I would reverse Plancarte's conviction for indecent exposure on sufficiency-of-the-evidence grounds, I need not reach the constitutional issue. The majority, however, specifically interprets the relevant statute to mean that "a woman's fully exposed breasts are private parts" and may not be willfully and lewdly exposed. This holding is concerning for two reasons related to Plancarte's equal-protection argument.

First, Minn. Stat. § 617.23, subd. 1(1), criminalizes lewdly exposing the "person's body"; therefore, I believe that this court need not interpret "private parts" to include a gender classification. This court may simply determine whether the evidence is sufficient to prove that Plancarte lewdly exposed her body. By defining "private parts" to include women's breasts, the majority's interpretation of the indecent-exposure statute prescribes one rule for women, requiring them to cover their breasts, and a different rule for men, allowing them to go topless. This adds a gender classification not otherwise found in the indecent-exposure statute.

Second, in my opinion, by criminalizing nude female breasts under Minn. Stat. § 617.23 as applied to Plancarte, the majority's interpretation squarely raises whether the statute violates the Equal Protection Clause. I am not satisfied that this issue is resolved by existing precedent.

I recognize that this court in *Turner* considered and rejected an equal-protection challenge to a park ordinance that expressly included a gender classification, criminalized exposure by persons ten years of age and older of the "female breast below the top of the areola," and required "a fully opaque covering in or upon any park or parkway." 382 N.W.2d at 253, 255-56 (quoting Minneapolis, Minn., Park Board Ordinance PB2-21 (1982)).

I am not persuaded, however, that *Turner* is binding precedent for the indecent-exposure statute because the park ordinance was considerably narrower than the majority's interpretation of section 617.23. As this court explained in *Turner* when it rejected an overbreadth challenge to the park ordinance: the park ordinance "specifically

states what parts of the body must be covered, the kind of covering necessary, and the age group affected. It does not purport to regulate speech. It contains an exception for nudity in artistic performance." *Id.* at 255. Based on the differences in the language used in the park ordinance and in the indecent-exposure statute, I would not resolve Plancarte's challenge by applying *Turner*.

I also question whether *Turner's* reasoning is sound based on intervening precedent of the United States Supreme Court. Minnesota appellate courts are "extremely reluctant to overrule our precedent under principles of stare decisis and require a compelling reason before overruling a prior decision." *Daniel v. City of Minneapolis*, 923 N.W.2d 637, 645 (Minn. 2019) (quotation omitted); *see also State v. Chauvin*, 955 N.W.2d 684, 690 (Minn. App. 2021), *rev. denied* (Minn. Mar. 10, 2021). "But we are not bound to unsound principles." *Daniel*, 923 N.W.2d at 645 (quotation omitted).[11]

*Turner* analyzed the park ordinance in two steps: (1) an equal-protection analysis did not apply because "men and women are not similarly situated"; and (2) the challenged park ordinance served "important governmental objectives." 382 N.W.2d at 256. First, I examine relevant constitutional principles and then explain why I question the legal soundness of *Turner's* conclusion.

_____

[11] I am unconvinced by the legislature's failure to amend the indecent-exposure statute to "provide for a blanket exemption for the exposure of women's breasts," as explained in the concurrence. The concurrence relies on caselaw about "judicial construction" and the legislature's decision to otherwise amend the indecent-exposure statute five times since *Turner* was decided. But judicial-construction caselaw refers to decisions by the Minnesota Supreme Court. The concurrence does not cite any judicial-construction caselaw stating that judicial construction applies to decisions of this court.

### A. Whether men and women are similarly situated in all relevant respects under the indecent-exposure statute is a threshold determination.

Plancarte maintains that she is similarly situated to men in all relevant respects. This court heard and rejected a similar argument in *Turner*, in which we recognized that there is a difference between male and female breasts. *Id.* at 255. We observed that "female breasts . . . unlike male breasts, constitute an erogenous zone and are commonly associated with sexual arousal. Common knowledge tells us that there is a real difference between the sexes with respect to breasts." *Id.* (quoting *City of Seattle v. Buchanan*, 584 P.2d 918, 920 (Wash. 1978)). Neither *Turner* nor the foreign jurisdiction it cited relied on any objective information or data to support its analysis of what is erogenous. Plancarte's brief to this court refers to social-science data from 2006 that suggests otherwise or at least that some social change is ongoing.[12] Regardless, *Turner*'s reliance on "common knowledge" and "real differences" begs for reexamination under today's societal understandings and norms.

Caselaw postdating *Turner* supports the view that we must revisit assumed differences between the exposure of female breasts and male breasts.[13] I understand Supreme Court precedent to caution that appellate courts must not mechanically apply precedent to resolve equal-protection issues. In *Sessions v. Morales-Santana*, the supreme

---

[12] According to Plancarte, nearly one in five women do not consider their breasts to be erogenous and over half of men consider their own chests to be erogenous. Roy Levin & Cindy Meston, *Nipple/Breast Stimulation and Sexual Arousal in Young Men and Women*, 3 J. Sexual Med. 450 (2006).

[13] I note that males have breasts and may get breast cancer. *See* Mayo Clinic, *Male Breast Cancer*, https://www.mayoclinic.org/diseases-conditions/male-breast-cancer/symptoms-causes/syc-20374740 [https://perma.cc/G7SC-7V4P].

court instructed that appellate courts must evaluate gender classifications to determine whether they "substantially serve an important governmental interest *today*, for 'in interpreting the [e]qual [p]rotection [g]uarantee, [we have] recognized that new insights and societal understandings can reveal unjustified inequality . . . that once passed unnoticed and unchallenged.'" 582 U.S. 47, 59 (2017) (quoting *Obergefell v. Hodges*, 576 U.S. 644, 673 (2015)).[14]

As to the crime of indecent exposure, our legislature has recognized one physical difference between men's and women's breasts—women can breastfeed, and doing so is not lewd exposure. Minn. Stat. § 617.23, subd. 4; *see also Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 801 (10th Cir. 2019) (recognizing one "inherent physical difference[] . . . between women's and men's breasts" is "the unique potential to nourish children"). Because the legislature created a statutory exemption for this genuine distinction between men and women as not criminal, it is not clear why any further gender classification is appropriate. In other words, the "real differences" between men and women that *Turner* relied upon may have been addressed by the breastfeeding exemption, which was adopted in 1998 after *Turner* was decided. 1998 Minn. Laws ch. 369, § 2, at 796-97.

---

[14] In *Cabon v. Mohammed*, for example, the Supreme Court rejected the view that "unwed fathers [are] invariably less qualified and entitled than mothers" to take responsibility for nonmarital children. 441 U.S. 380, 382, 394 (1979); *see also Morales-Santana*, 582 U.S. at 76 (striking down a gender-based framework for how children born abroad acquire U.S. citizenship from birth by as violating the Equal Protection Clause).

Because *Turner* did not examine the indecent-exposure statute or consider the breastfeeding exemption, I would therefore conclude that *Turner* does not resolve whether men and women are similarly situated in all relevant respects under the indecent-exposure statute.

**B.      The indecent-exposure statute may not survive intermediate scrutiny.**

Constitutional challenges related to gender-based classifications must survive intermediate scrutiny. *See United States v. Virginia*, 518 U.S. 515, 532-33 (1996) (describing the development of the review standard after *Reed v. Reed*, 404 U.S.71, 73 (1971)). Appellate courts give heightened scrutiny to differential treatment based on gender because gender "generally provides no sensible ground for differential treatment." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). In other words, the gender-based classification "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 210 (1976) (striking down a gender-based differential for the age at which men and women could legally buy 3.2% beer). The Supreme Court has held that when a statute creates a gender-based classification, the burden of showing that the classification is justified "is demanding and it rests entirely on the State." *Virginia*, 518 U.S. at 532-33. Indeed, the required justification for a gender classification must be "exceedingly persuasive." *Id.* at 524 (quotation omitted).

*Turner* upheld the park ordinance, in part, by recognizing the state's interest in "controlling public nudity and preserving society norms" and further that "[t]he gender

classification is substantially related to achieving those objectives." 382 N.W.2d at 256. I am unconvinced that *Turner*'s analysis is sound.

First, relying on "society norms" as an important government objective is one way of saying the indecent-exposure law is "grounded in stereotypes about the way women are." *Fort Collins*, 916 F.3d at 803; *see also Morales-Santana*, 582 U.S. at 63 (observing that generalizations "have a constraining impact, descriptive though they may be of the way many people still order their lives," because they "may create a self-fulfilling cycle of discrimination" (quotation omitted)); *Virginia*, 518 U.S. at 550 (stating that "generalizations about 'the way women are'" typically serve no important governmental objective).

Second, "controlling" public nudity is at best a limited government objective given the legislature's express exemption for breastfeeding. *See Fort Collins*, 916 F.3d at 802 (discussing a breastfeeding exemption to a public-nudity ordinance and noting that "even children who weren't exposed to their mothers' breasts as breastfeeding infants may still see a naked female breast if they pass a woman breastfeeding in public").

In briefing to this court, the state appears to assume that the indecent-exposure statute discourages public nudity that would occur in the absence of the statute—an assumption for which there is no record support. Even if I accept this assumption, applicable caselaw requires that the state establish a substantial justification for controlling public nudity through a gender-based classification. In other contexts, the Supreme Court has concluded that when the state's interest would be "as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of

sexual stereotypes, the State cannot be permitted to classify on the basis of sex." *Orr v. Orr*, 440 U.S. 268, 283 (1979). Applying this reasoning, the Supreme Court rejected statutory distinctions that imposed a burden upon on one gender to attain a government goal, describing the statutes as "underinclusive." *Id.* at 271-72, 278 (striking down statutory scheme that imposed alimony obligations on husbands but not wives as a violation of the Equal Protection Clause). Here, as a way of controlling public nudity, the indecent-exposure statute may be underinclusive. The government can achieve its objective by prohibiting public nudity without a gender distinction.

For the reasons stated, I reject the conclusion that this court should uphold Plancarte's equal-protection challenge to the indecent-exposure conviction based on *Turner*. I distinguish the opinion based on its facts, intervening caselaw, and subsequent changes in statutory law, such as adoption of the breastfeeding exemption.

I recognize that most federal courts that have considered the issue have rejected equal-protection challenges to female-only bans on exposed breasts.[15] But some disagree. *See, e.g.*, *Fort Collins*, 916 F.3d at 805 (holding that plaintiffs made a strong showing on likelihood of success on the merits for an equal-protection challenge to an ordinance that imposed criminal penalties for females who exposed breasts in public); *People v. Santorelli*, 600 N.E.2d 232, 237 (N.Y. 1992) (Titone, J., concurring) (stating "the

---

[15] *See, e.g.*, *United States v. Biocic*, 928 F.2d 112, 115 (4th Cir. 1991) (holding that a local ordinance prohibiting the public exposure of female, but not male, breasts did not deny women equal protection); *Tagami v. City of Chicago*, 875 F.3d 375, 380 (7th Cir. 2017) (same); *Free the Nipple-Springfield v. City of Springfield*, 923 F.3d 508, 512 (8th Cir. 2019) (same).

gender-based classification" in an ordinance criminalizing exposure of private parts as applied to women's breasts "violates appellants' equal protection rights"). This court—or the Minnesota Supreme Court—should consider the issue and decide this important question about gender discrimination.

Thus, I dissent because I conclude that the state's evidence is insufficient to prove lewd exposure of Plancarte's breasts beyond a reasonable doubt. The state's evidence proved nude—but not lewd—conduct, despite the legislature's plainly stated intent to require lewd conduct before imposing criminal penalties. Plancarte's conviction for indecent exposure therefore should be reversed. While I need not decide the equal-protection issue, I conclude that *Turner* is not binding precedent on the issue and would not reject Plancarte's constitutional challenge on that basis.